**10-4817-cr**
**United States v. Carthen**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: August 24, 2011            Decided: May 23, 2012)

Docket No.  10-4817-cr

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

        <u>Appellee</u>,

           v.

TYRONE L. CARTHEN,

        <u>Defendant-Appellant</u>.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:   WINTER, McLAUGHLIN, and CABRANES, <u>Circuit</u> <u>Judges</u>.

Appeal from the adoption by the United States District Court for the Eastern District of New York (Dora L. Irizarry, <u>Judge</u>) of a magistrate judge's (John M. Azrack, <u>Magistrate</u> <u>Judge</u>)report and recommendation to revoke appellant's supervised release for violating a mandatory condition of supervision that he "shall not commit another federal, state, or local crime."  Appellant principally disputes the district court's determination that, under Federal Rule of Criminal Procedure 32.1, good cause existed to allow the government to introduce hearsay evidence during his Violation of Supervised Release hearing.  We affirm.

1

EDWARD S. ZAS, of counsel, Federal Defenders of New York, Inc., New York, New York, for Defendant-Appellant.

TYLER J. SMITH, Assistant United States Attorney, of counsel (Susan Corkery, Assistant United States Attorney, of counsel) on the brief for Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York, for Defendant-Appellee.

WINTER, Circuit Judge:

Tyrone L. Carthen appeals from Judge Irizarry's adoption of Magistrate Judge Azrack's report and recommendation ("R & R"). The R & R recommended revocation of appellant's supervised release because he violated a mandatory condition of his supervision, namely that he "shall not commit another federal, state or local crime." The revocation stems from appellant's actions against Marquita Cox ("Marquita"), appellant's ex-girlfriend and the mother of three of his children. Appellant primarily claims a violation of the Confrontation Clause and challenges the district court's determination that, under Federal Rule of Criminal Procedure 32.1, good cause existed to allow the government to rely principally upon hearsay evidence in his Violation of Supervised Release ("VOSR") hearing. We affirm.

BACKGROUND

On February 26, 2010, after serving a twenty-two month prison sentence for the possession of a firearm by a convicted felon under 18 U.S.C. §§ 922(g)(1) and 924(a)(2), appellant was

2

released from a halfway house in Brooklyn, New York to begin a three-year term of supervised release. On April 5, 2010, Senior Probation Officer Darcy A. Zavatsky learned that appellant might have violated the conditions of his supervised release when appellant reported to the probation department with a Temporary Order of Protection and Family Offense Petition that Marquita had filed against him.

Zavatsky conducted an investigation and was the sole witness at appellant's VOSR hearing. Zavatsky's testimony described statements made to her in a series of interviews with various individuals, statements in various police or court documents, and other corroborating evidence.

On April 27, 2010, the government filed the VOSR Report charging appellant with two counts of violating the mandatory condition of supervision that he "not commit another federal, state or local crime": (i) conduct constituting felony assault and/or attempted assault (a felony crime of violence), and (ii) conduct constituting assault, attempted assault, aggravated harassment, menacing, reckless endangerment and/or harassment (a misdemeanor offense).

Based on interviews conducted with Marquita, Zavatsky testified that, on the date of his release, appellant arrived at the apartment in which Marquita was staying with her then boyfriend, Manuel Joyner. Appellant grabbed Marquita's throat and threw her against a wall, choking her until she nearly lost

3

consciousness. Appellant demanded to know the whereabouts of Joyner, who was hiding in the bathroom. Appellant stated that he wanted to "put a bird cage over [Marquita's] head," which she interpreted to mean that he wanted to "break her face." Marquita ran to the bathroom in which Joyner was hiding and held the door closed from the outside. Appellant jabbed at Marquita's hands with a pair of scissors and, in the process, punctured her skin, ultimately causing a small scar that was observed by Zavatsky. Marquita was able to diffuse the situation by convincing appellant she was no longer in a relationship with Joyner. Marquita recounted the stabbing in a sworn Family Offense Petition later filed in Family Court.

Zavatsky testified further about events that took place on March 15, 2010, based on interviews with Marquita, Joyner, their friend Takima Booker ("Booker"), and Marquita's mother Nancy Cox ("Nancy"), who were at Nancy's home that day. Appellant, lurking outside, began calling Marquita continuously on her cell phone to ask her to go outside to speak to him. Nancy and Booker, out of concern that appellant would harm Marquita, convinced her to stay inside. Nancy then went into the hallway of her residence to ask appellant to leave and remind him that he was not welcome at her home. When appellant refused to leave, Nancy called the police, who responded to the scene and filed a Domestic Incident Report with the 71st precinct recounting Marquita's statement that appellant "verbally harassed her by means of yelling and screaming and knocking on [her mother's] door."

4

Based on interviews with Marquita and Booker about events that took place on March 21, 2010, Zavatsky testified, and stated in the VOSR Report, that appellant called Marquita repeatedly and waited for her at her apartment building, confronting her and Booker as they returned. Appellant seized both Booker's and Marquita's cell phones to prevent them from calling anyone, yelled and cursed at Marquita, accused Marquita of lying about where she had been all day, grabbed Marquita around the throat with one hand, choked her, and forced her head into a door. Appellant also slapped Marquita in the face, ripped off her wig, and knocked her pocketbook out of her hands.

Appellant convinced Marquita to return to her apartment with him. Marquita, frightened, asked Booker to accompany them. Zavatsky testified that once in the apartment, appellant again grabbed Marquita around the throat tightly and pressed his fist up against her cheek with force. Booker, who was in a different room at the time, did not witness this attack firsthand, but she confirmed that Marquita told her about it and that she had observed additional red marks on Marquita's face and neck.

When Booker's father called her cell phone later that evening, appellant returned it to her. Booker and Marquita asked to leave the apartment to meet Booker's father. Appellant, concerned Marquita was actually planning to meet Joyner, refused to let them leave alone, and insisted on accompanying them. Appellant repeatedly stated that he would beat Marquita "like [she] was a man" if he saw Joyner on the street.

After about an hour, appellant, Marquita, and Booker returned to the apartment and the women began to plan an escape from appellant. Early the next morning, Marquita and Booker left the apartment to take Marquita's children to school, after which they met Nancy and recounted to her the events from the prior evening. Nancy called Victim Services and reported the assault on Marquita. Marquita willingly went to a shelter for battered women.

On March 23, 2010, Marquita filed a sworn Family Offense Petition in Kings County Family Court and was issued a temporary order of protection, which was followed by a two-year permanent order of protection on April 13, 2010. Appellant has not violated the order of protection or otherwise bothered Marquita since its entry.

As noted, Zavatsky gave the testimony described above based on: (i) the interviews conducted with Marquita, Booker, and Nancy; (ii) Marquita's Family Offense Petition; (iii) the police Domestic Incident Report; and (iv) Zavatsky's observation of a scar on Marquita's right hand. The government called no other witnesses.

We turn now to the evidence regarding the absence of witnesses with personal knowledge of relevant events. Zavatsky testified that on April 8, 2010, Marquita recounted appellant's abusive behavior as described above and agreed to testify at the VOSR hearing. However, during subsequent interviews, Marquita informed Zavatsky that she no longer wished to cooperate because

6

she did not want to be responsible for sending appellant back to jail.  On the day of the hearing Marquita stated to Zavatsky and an Assistant United States Attorney that she would not testify and that she would "risk going to jail if she were called to testify and refused."  In these statements, she sought to minimize appellant's conduct by stating that she had exaggerated some of the details in the Family Offense Petition.  She also expressed the wish that she had just "taken the ass whipping and not reported what happened."

The R & R rejected appellant's Confrontation Clause arguments and recommended revocation of appellant's supervised release.  On October 25, 2010, after explicitly considering:  (i) appellant's interest in cross-examining the hearsay declarants; (ii) the government's reasons for not producing witnesses with personal knowledge of relevant events; and (iii) the reliability of the proffered hearsay, see United States v. Williams, 443 F.3d 35, 45 (2d Cir. 2006), the district court adopted the R & R and determined that "good cause" existed under Rule 32.1(b)(2) to allow the hearsay testimony, United States v. Carthen, No. 10-CR-319, 2010 WL 4313384 (E.D.N.Y. Oct. 25, 2010).

On October 28, 2010, Marquita submitted a letter to the court stating that she "lied on Mr. Tyrone Carthen," that appellant "never put his hands on [her]," and that she "just [does not] want Mr. Carthen to have to spend any more time in jail because of [her]."  Based on this letter, appellant filed a

7

motion to reopen the VOSR hearing, which the district court denied.

On November 5, 2010, the district court sentenced appellant, on each count (concurrently), to eighteen months' imprisonment, followed by eighteen months of supervised release. The sentence was based on a Grade "A" violation of supervised release and a Criminal History Category of III.

On appeal, appellant argues that the district court erred in: (i) admitting unreliable hearsay without good cause; (ii) finding that appellant engaged in felonious conduct that constitutes a Grade "A" violation of supervised release; and (iii) failing to reopen the hearing in light of Marquita's recantation.

DISCUSSION

a) Good Cause for Admitting Hearsay

Revocation proceedings are not deemed part of a criminal prosecution, and, therefore, defendants in such proceedings are not entitled to "the full panoply of rights" that criminal defendants generally enjoy. Morrissey v. Brewer, 408 U.S. 471, 480 (1972). The Confrontation Clause prohibitions against hearsay evidence do not strictly apply, see, e.g., Williams, 443 F.3d at 45; United States v. Aspinall, 389 F.3d 332, 342-43 (2d Cir. 2004), abrogation on other grounds recognized by United States v. Fleming, 397 F.3d 95, 99 n.5 (2d Cir. 2005); United States v. Chin, 224 F.3d 121, 124 (2d Cir. 2000), and at a VOSR hearing, the alleged violation of supervised-release need only be

8

proven by a preponderance of the evidence, not beyond a reasonable doubt, see United States v. McNeil, 415 F.3d 273, 277 (2d Cir. 2005). In a VOSR hearing, a defendant has "the right to confront and cross-examine adverse witnesses (unless the [court] specifically finds good cause for not allowing confrontation)." Morrissey, 408 U.S. at 489; see also Fed. R. Crim. P. 32.1(b)(2)(C) (defendants must have an opportunity to question adverse witnesses "unless the court determines that the interest of justice does not require the witness to appear").

A proffered hearsay statement that falls within an established exception is of course admissible in a VOSR hearing. For statements that would be inadmissible under the Federal Rules of Evidence, a determination of "good cause" requires the court to balance "the defendant's interest in confronting the declarant[] against[] . . . the government's reasons for not producing the witness and the reliability of the proffered hearsay." Williams, 443 F.3d at 45. The defendant's interest is entitled to little weight if the defendant caused the declarant's absence by way of intimidation. Id.

We review a district court's balancing of the Rule 32.1 factors for abuse of discretion. Id. at 46. "[A] district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision . . . cannot be located within the range of permissible decisions." United States v. Jones, 299 F.3d 103,

9

112 (2d Cir. 2002) (quoting <u>Zervos v. Verizon N.Y., Inc.</u>, 252 F.3d 163, 169 (2d Cir. 2001)(internal quotation marks omitted)(omission in original)).

In balancing the various interests under Rule 32.1, the district court acknowledged appellant's strong interest in confronting Marquita.  However, the court also concluded that the government's reason for not calling her was reasonable in that she repeatedly refused to testify.  Finally, the district court found that the hearsay evidence was reliable as a whole.  We conclude that the finding of good cause for the admission of the hearsay statements was amply supported.

For purposes of analysis, the reasonableness of the government's not calling Marquita at the VOSR hearing turns in large part on weighing the reliability of her earlier statements regarding domestic abuse against her desire not to testify as expressed just prior to the hearing.  The earlier statements bore significant indicia of reliability.  Zavatsky had conducted six interviews with Marquita, as well as interviews with Booker and Nancy.  Their stories corroborated each other.  Zavatsky observed a scar on Marquita's right hand consistent with the wound Marquita had described in her account of the events of February 26, 2010, in which appellant stabbed her right hand with a scissor blade.  The district court found additional corroborating evidence in the NYPD Domestic Incident Report, Marquita's Family Offense Petition, the temporary and permanent orders of protection, and the fact that Marquita sought protection from appellant at a shelter for victims of domestic violence.

10

The hearsay portions of this evidence were detailed, credible, and sometimes under oath. They were not idle chit-chat. They were also corroborated by other evidence, including a court order that was admissible as an official record, see Fed. R. Evid. 803(8) (public records exception); the scar that was personally observed by Zavatsky; and Marquita's report to the shelter that was not hearsay under Fed. R. Evid. 801(a) because it was not intended as an assertion.

Also, Marquita's expressed desire not to testify was not an unusual reaction by a victim of domestic abuse. And, while she sought at that time not to testify and to minimize the extent of that abuse, she actually confirmed the truth of her earlier statements in saying that she should have just "taken the ass whipping."

We have held that good cause justifying the absence of a declarant exists when a defendant has a "history of violent conduct [that] ma[kes] reprisal against [the declarant] a possibility." Jones, 299 F.3d at 113. In United States v. Jackson, 347 Fed. App'x 701, 703 (2d Cir. 2009), cert. denied, 130 S. Ct. 1544 (2010), we found good cause not to call an assault victim to testify after she had "recanted her original accusations" because she had previously offered a "sworn and recorded account of her assault," and additional independent evidence corroborated her original statements. Id.; see also United States v. Hall, 419 F.3d 980, 988 n.6 (9th Cir. 2005) (noting "well recognized" difficulty of securing cooperation of domestic violence victims and that most common reason for

11

dismissal of domestic violence crimes is non-cooperation of victims); United States v. Martin, 382 F.3d 840, 846 (8th Cir. 2004) (holding hearsay statements of rape victim admissible where she refused to testify and statements were corroborated by other evidence).

Finally, as in Jones, appellant has a history of violence. Appellant was previously arrested for a number of charges related to violence against the mother of his two oldest children. Prior to that, appellant had been convicted of misdemeanor assault on a female and misdemeanor simple assault.

Regarding the failure to call Booker and Nancy, the government asserts that it expected Nancy to refuse to testify because she would align with her daughter out of loyalty. Moreover, the government believed her testimony to be of less importance than Marquita's because the only pertinent event of which she had first-hand knowledge was the incident on March 15, 2010, which was already detailed in the NYPD report. The government further argues that it believed Booker to be in Delaware, which, it argued, was enough for a finding of good cause. Although it would have been preferable to ask Booker or Nancy to testify, the failure to pursue them does not fatally undermine the finding of good cause given the strength of the record viewed as a whole.

Thus, the district court did not abuse its discretion in balancing the interests under Rule 32.1. Accordingly, appellant was not deprived of his constitutional right to confront and cross-examine adverse witnesses.

b) <u>Finding of Felonious Conduct</u>

Appellant argues that the government presented legally insufficient evidence to prove assault in the second degree or attempted assault in the second degree -- the two felonies enumerated in Count 1 of the Violation Report. The government concedes that the evidence presented at the VOSR hearing was insufficient to prove assault in the second degree. The question, therefore, is whether the evidence presented was sufficient to establish attempted assault in the second degree.

Under New York law, attempted assault in the second degree requires that a defendant, "with intent to cause physical injury to another person," attempt to cause "such injury to such person . . . by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law § 120.05(2). Physical injury is defined as "impairment of physical condition or substantial pain." <u>Id</u>. § 10.00(9). To constitute physical injury, the "pain caused by such a wound need not be severe or intense to be substantial," but at a minimum the injury must "cause some pain or, to some extent, result in some [physical] impairment." <u>People v. Kruppenbacher</u>, 917 N.Y.S.2d 405, 410 (3d Dep't. 2011) (internal quotation marks omitted). In <u>Kruppenbacher</u>, the evidence of physical injury presented only an "insignificant" scar, which is insufficient to establish assault in the second degree; however, where the "defendant harbored an intent to harm the victim when he attacked her with" the dangerous instrument, that is legally sufficient evidence to establish that he attempted to assault. <u>Id.</u>

13

On several different occasions, appellant physically attacked and expressed a desire to injure Marquita severely. He grabbed her around the throat, threw her against a wall, and used scissors to get her hands off the doorknob, ultimately stabbing her in her right hand. Although the injury was relatively minor, leaving only a small scar, Marquita could have been injured more severely, resulting in physical impairment or substantial pain.

Appellant's actions easily support an inference that he had no qualms about seriously injuring Marquita and indeed wished to do so. Therefore, the evidence presented at the VOSR hearing was sufficient to support the district court's finding, by a preponderance of evidence, that appellant committed attempted felony assault under New York law.

c) Reopening the VOSR Hearing

Appellant also argues that the district court erred in declining to reopen the VOSR hearing in light of Marquita's October 28, 2010, letter stating that she "lied on [sic] Mr. Tyrone Carthen," that appellant "never put his hands on [her]," and that she "just [does not] want Mr. Carthen to have to spend any more time in jail because of [her]."

Although we have not explicitly ruled on the proper standard of review of a district court's denial of a motion to reopen a revocation hearing, the standard clearly is one of abuse of discretion. That "standard accurately reflects the degree of deference properly accorded a district court's decision[] regarding evidentiary matters and the general conduct of trials." United States v. Bayless, 201 F.3d 116, 131 (2d Cir. 2000)

14

(applying abuse of discretion to reconsideration of a suppression motion because of new evidence); see also United States v. Gotti, 794 F.2d 773, 780 (2d Cir. 1986) (applying abuse of discretion standard to denial of motion to reopen bail hearing).

In the analogous context of motions for a new trial, witness recantations are viewed "with the utmost suspicion," Haouari v. United States, 510 F.3d 350, 353 (2d Cir. 2007) (quoting Ortega v. Duncan, 333 F.3d 102, 107 (2d Cir. 2003)), particularly in the context of recantations from victims of domestic violence, see O'Laughlin v. O'Brien, 577 F.3d 1, 4 (1st Cir. 2009) (noting that victims of domestic violence often recant or refuse to cooperate).

Factors considered in reviewing a district court's decision to decline an evidentiary hearing involving a recanting witness include:  the importance of the witness's testimony in the original proceeding; "the existence of evidence corroborating either the conviction or the recantation; . . . the temporal proximity of the trial testimony and the purported recantation; the consistency of the recantation with the witness's comments and behavior before, during, and after trial; and the existence of evidence of outside influence suggesting either coerced testimony or coerced recantation." United States v. Rojas, 520 F.3d 876, 884 (8th Cir. 2008).  Where the evidence "could have no effect on the ultimate disposition of the matter," a district court may decline to reopen the revocation hearing.  United States v. Mitchell, 429 Fed. App'x 271, 276 (4th Cir. 2011).

The district court did not find Marquita's letter sufficiently credible to undermine her earlier corroborated and sworn accounts of the attacks. That finding was not an abuse of discretion.

Marquita's effort to minimize appellant's conduct is consistent with the guilt she expressed for reporting the abuse instead of "tak[ing] the ass-whipping and not report[ing] what happened." It is also consistent with her expressed desire not to be responsible for appellant returning to prison. Furthermore, the district court was entitled to consider that such a recantation is not unusual in domestic violence cases. Victims of this type of violence often are protective of, and deny allegations against, their abusers.

In contrast to the recantation, Marquita's original story was corroborated by the scar on her hand; Zavatsky's interviews with Booker and Nancy; her own sworn and graphically detailed testimony in her March 23, 2010, Family Offense Petition; the NYPD Domestic Incident Report; and the fact that Marquita went to a domestic violence shelter in a self-evident attempt to escape appellant. Therefore, the district court did not err in denying appellant's request to reopen the VOSR hearing.

                              CONCLUSION

For the foregoing reasons, the order of the district court is affirmed.

16