In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3184

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LORENZO MOSLEY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:07 CR 192 — **James T. Moody**, *Judge.*

ARGUED APRIL 17, 2014 — DECIDED JULY 16, 2014

Before MANION, SYKES, and TINDER, *Circuit Judges.*

MANION, *Circuit Judge.* Lorenzo Mosley was convicted in
2008 of distributing cocaine base (crack), in violation of 21
U.S.C. § 841(a)(1). Following his release from prison, and while
he was on supervised release, he was arrested by local police
for dealing cocaine, possessing cocaine and marijuana, and
driving with a suspended license. Mosley's federal probation
officer petitioned the district court to find him in violation of
his conditions of supervised release and revoke his supervised

release. Mosley admitted possession of cocaine, but denied dealing cocaine, a more serious "Grade A" violation.[1] At the revocation hearing, the district court heard hearsay statements in a recorded interview of a woman claiming to have bought cocaine from Mosley and from the testimony of the arresting officer, who had interviewed the woman. Mosley was not given the opportunity to confront or cross-examine the woman. Ultimately, the district court found Mosley had committed all the alleged violations, revoked Mosley's supervised release, and sentenced him to 21 months' incarceration. Mosley appeals, arguing that it was error for the district court to admit the hearsay statements without finding that there was "good cause," as required by Federal Rule of Criminal Procedure 32.1(b)(2)(C) and the Fifth Amendment Due Process Clause as interpreted in *Morrissey v. Brewer*, 408 U.S. 471 (1972). We conclude that the district court did err, but that the error was harmless and so we affirm.

## I. Background

On July 26, 2012, Detective Timothy Nosich of the Munster Police Department, while driving in his squad car, observed a car stopped in front of a house. He saw a woman get in the car on the passenger side. As he drove by, Detective Nosich noticed the woman nervously watching his squad car with "a look of dread." After passing by, he kept an eye on the car in his rearview mirror and noticed that the woman quickly exited the car. Based on his seven years of experience, Detective

---

[1] Mosley also admitted driving while his license was suspended and was found in violation for possessing marijuana, but neither of those violations is relevant to this appeal.

Nosich believed he had just witnessed a drug deal. He followed the car when it pulled away and as soon as he observed a traffic violation—turning without signaling—he pulled the car over. The driver, Lorenzo Mosley, had been operating with a suspended license, so Detective Nosich arrested him and began an inventory search of the car. He discovered a small amount of marijuana hidden in a dashboard panel, a small amount of crack cocaine in a clear baggie on the floor between the passenger seat and the center console, and $300 to $400 in cash on his person. No paraphernalia for using either crack or marijuana were present in his car. Within an hour, Detective Nosich and another officer made contact with Sheryl Simmons, the woman who had gotten in and out of the car, and questioned her. At the time, she was carrying a grocery bag containing pot scrubbing pads (which, according to Detective Nosich, are commonly used as filters in crack pipes). After a brief conversation, Simmons allowed the officers to enter her home and she gave them four little yellow baggies that contained what appeared to be crack cocaine, which had been in her purse, and a crack pipe.

At the time Mosley was arrested, he was near the end of a three-year term of supervised release following incarceration for a conviction for distribution of cocaine base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1). The prior conviction stemmed from Mosley selling little yellow plastic baggies of crack cocaine. PSR at 4. When Mosley's probation officer learned of Mosley's arrest (and resulting state criminal charges) he filed a petition with the district court seeking revocation of Mosley's supervised release. The petition alleged violations of the conditions of his supervised release for

distributing cocaine, possessing marijuana and cocaine, and driving with a suspended license. The most serious alleged violation was distributing cocaine, a Grade A violation.[2] The district court held a hearing where Mosley admitted possessing cocaine and driving while his license was suspended. With regard to distributing cocaine, Detective Nosich testified, without objection, to the events recounted above.

However, at the revocation hearing, Detective Nosich also testified to statements that Simmons had made to him during their conversation and he played a video of her being interviewed for the judge—both over Mosley's objections. Detective Nosich, and Simmons via the recorded interview, recounted the following: Simmons had initially said that she was paying Mosley for rides he had given her. But later in the conversation she admitted to the officers that she had called Mosley twenty to thirty minutes before he arrived to arrange a purchase of crack cocaine. When Mosley arrived and she briefly got in the car with him, she purchased five little yellow baggies of cocaine for $10 each plus a $5 delivery fee, totaling $55. Simmons also stated that she had already smoked one of the little baggies, but she took the officers into her home and gave them the other four baggies and her crack pipe. Later that day, Detective Nosich interviewed Simmons at the station (which was recorded and played at Mosley's hearing). There, Simmons repeated the same story but also gave more back-

---

[2]   Violations are graded either A, B, or C based on the seriousness of the conduct and each grade differs regarding the necessity, or length, of revocation. *See* U.S.S.G. §§ 7B1.1–7B1.4.

ground about her having purchased crack cocaine from Mosley about thirty times over the past five years.

Mosley objected strenuously to all of Simmons's out-of-court statements whether offered via the video or Detective Nosich's testimony, arguing that they were hearsay and that denying him the right to cross-examine Simmons violated his constitutional right to confront his accuser. The district court summarily overruled these objections and found that the government had met its burden of proving all Mosley's violations by a preponderance of the evidence. Because dealing cocaine was a Grade A violation, Mosley's guideline range was 15–21 months' incarceration and the district court sentenced him to 21 months' incarceration. Had that drug violation not been found, his guideline range would have been 6–12 months' incarceration. *See* U.S.S.G. § 7B1.4 (Mosley's next highest violation (which he admitted) was Grade B and his criminal history was Category II). Mosley appeals.

## II. Discussion

While decisions to revoke supervised release are reviewed for abuse of discretion, *United States v. Dewayne*, 702 F.3d 373, 375 (7th Cir. 2012), constitutional arguments are reviewed *de novo. United States v. Robinson*, 14 F.3d 1200, 1202 (7th Cir. 1994).

### A. Constitutional Analysis

We have held that the Sixth Amendment, including the Supreme Court's holding in *Crawford v. Washington*, 541 U.S. 36 (2004) (that admitting testimonial hearsay without the opportunity to confront the declarant violated the Confrontation

Clause), does not apply to supervised release revocation hearings. *United States v. Kelley*, 446 F.3d 688, 690–92 (7th Cir. 2006). The Due Process Clause of the Fifth Amendment still secures "the right to confront and cross-examine adverse witnesses [in revocation proceedings] (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Morrissey*, 408 U.S. at 489. But considering the parenthetical clause, "we have interpreted *Morrissey* … to permit the admission of *reliable* hearsay at revocation hearings without a specific showing of good cause." *Kelley*, 446 F.3d at 692 (citing *United States v. Pratt*, 52 F.3d 671, 675 (7th Cir. 1995)). Hearsay is reliable if it "'bears substantial guarantees of trust-worthiness.'" *Id.* (quoting *Egerstaffer v. Israel*, 726 F.2d 1231, 1234 (7th Cir. 1984)). And "essentially [we] treat[] a finding of 'substantial trustworthiness' as the equivalent of a good cause finding for the admission of hearsay." *Id.* Even if the district court neglects to find either good cause or reliability, there is no error so long as the "record … is sufficiently clear … that the … hearsay was substantially trustworthy so as to establish good cause for not producing [the declarants] as live witnesses." *Id.* at 693. If the record so establishes, the admission of hearsay will "not undermine the fundamental fairness of [a defendant's] revocation hearing and [will] not violate his right to due process." *Id.* Accordingly, if we can conclude from the record on appeal that hearsay evidence was reliable, then admission of Simmons's hearsay statements did not violate due process.

Simmons's hearsay statements were reliable. The officer observed what Simmons later admitted was a drug transaction and Simmons produced the little yellow baggies of crack

cocaine that she claimed to have purchased from Mosley. And her story that selling crack in little yellow baggies was his signature was corroborated by his prior criminal conviction summarized in his PSR. In addition to that corroboration, Simmons's statements were against her penal interest. And while her availability would make her statements inadmissible in a typical criminal hearing, *see* Fed. R. Evid. 804(a) and (b)(3), the rules of evidence do not apply in supervised release hearings and the fact that her statement was against her penal interest is yet another indication of substantial trustworthiness. Accordingly, the district court's admission of Simmons's statements did not violate Mosley's rights to due process.

## B. Rule Analysis

In addition to the protections provided by the Due Process Clause of the Fifth Amendment, Rule 32.1(b)(2)(C) requires "a district court in a revocation hearing explicitly to balance the defendant's constitutional interest in confrontation and cross-examination against the government's stated reasons for denying them." *United States v. Jordan*, 742 F.3d 276, 280 (7th Cir. 2014).[3] Unlike the constitutional analysis, "reliability

---

[3] Rule 32.1 was largely a codification of *Morrissey*'s holding, and the advisory committee for the 2002 amendments encouraged applying the rule in accord with the circuits who employ a balancing-test interpretation of *Morrissey*. *See Kelley*, 446 F.3d at 692 n.4 (cataloguing circuits who require an explicit finding of good cause or a balancing test); *United States v. LeBlanc*, 175 F.3d 511, 515 (7th Cir. 1999) (Rule 32.1 "was largely a codification of *Morrissey*, 408 U.S. 471, which first held that due process required … a revocation hearing" and a limited confrontation right); Fed. R. Crim. P. 32.1 advisory committee's 2002 note ("the court should apply a balancing

(continued...)

cannot be the beginning and end of the 'interest of justice'
analysis under Rule 32.1(b)(2)(C), and we do not mean to imply
that finding the hearsay reliable would alone suffice to support
its admission *under the rule*." *Id.* at 280 (emphasis added).
Rather, the defendant's interest must be balanced against the
government's reasons. *Id.* While reliability of hearsay weakens
the defendant's interest in confrontation, a weak interest is
enough to tip the balance toward exclusion if the government
offers no reasons for not producing the witness. Accordingly,
a showing of reliability in the record on appeal does not mean
there was no error, nor does it make the violation of Rule 32.1
harmless. Rather, we must consider whether the hearsay
would have been admitted had the district court correctly
considered the competing interests. And while the reliability of
the hearsay goes a long way toward answering that question,
we must also look at the government's reasons for not afford-
ing confrontation.

In this case, the district court failed to balance Mosley's
constitutional interests in confrontation and cross-examination
with the government's reasons for not producing the witness.
This was error under Rule 32.1. Further, we cannot conclude
that the district court would have admitted the hearsay if it
had properly balanced the interests because, even if the
hearsay was reliable (which we think it was), the government
has offered no reason whatsoever for failing to produce
Simmons. Accordingly, there is nothing in the record to
balance against Mosley's interest.

---

(…continued)
test at the hearing itself" (citing *Morrissey*, 408 U.S. at 489)).

Nonetheless, even where a proper balancing of the interests would weigh in favor of excluding hearsay, its erroneous admission may still be harmless for the alternate reason that the violation of supervised release would have been found even without the hearsay evidence. *See, e.g., United States v. Johnson*, 927 F.2d 999, 1003–04 (7th Cir. 1991) (holding that admission of hearsay was harmless where strong circumstantial evidence established the same facts). That is the case here because, considering only the non-hearsay evidence submitted to the district court, the result would have been the same. "To revoke a defendant's supervised release under 18 U.S.C. § 3583(e)(3), the district court must find by a preponderance of the evidence that the defendant violated the terms of his supervised release." *United States v. Goad*, 44 F.3d 580, 585 (7th Cir. 1995). Detective Nosich observed Simmons glance at him with a nervous look of dread while getting in Mosley's car only to get back out right away. Immediately thereafter, Detective Nosich caught Mosley with crack cocaine, but no paraphernalia for its use, and $300 to $400 in cash. Detective Nosich then quickly caught up with Simmons and found that she was carrying material in a grocery bag that his experience told him was used for filters in a crack pipe. His experience proved right when Simmons surrendered four little yellow baggies of what appeared to be crack cocaine and a crack pipe. Detective Nosich testified to these facts and his opinion based on years of experience that what he had witnessed was a drug deal. But the district court did not have to rely on that alone. In the PSR from Mosley's previous criminal conviction, we see that he used little yellow baggies to hold the crack cocaine that he sold—exactly what Simmons surrendered to police from her

purse only about an hour after getting in and out of the car with him. *See* Fed. R. Evid. 404(b)(2) (evidence of other crimes admissible to prove identity, i.e., *modus operandi*). All of this together is strong circumstantial evidence that Mosley dealt crack cocaine to Simmons without any need for recourse to Simmons's reliable statements. Simmons's statements just confirmed what the circumstantial evidence had independently made clear. Accordingly, disregarding the hearsay, the government still would have met its burden of proving by a preponderance of the evidence that Mosley distributed cocaine in violation of his conditions of supervised release.[4] Because the result would have been the same without admitting the hearsay, the error was harmless.[5]

### III. Conclusion

The district court erred by failing to balance Mosley's constitutional interest in confronting and cross-examining

---

[4] In *Jordan*, we were unable to determine whether the hearsay in a police report would have been admitted had the district court balanced the interests. 742 F.3d at 281–82. Likewise here, we cannot conclude that the hearsay would have been admitted had the district court balanced the competing interests. Remand was necessary in *Jordan* because the government relied almost exclusively on the hearsay in the police report. *Id.* at 278. However, here, the government offered more evidence of Mosley's violations than just Simmons's statements, so we find the error harmless based on the strength of the non-hearsay evidence.

[5] Because the district court only made a rule error, not a constitutional error, the normal harmless error rule of Fed. R. Crim. P. 52(a) applies, not the higher standard of *Chapman v. California*, 386 U.S. 18 (1967). *See United States v. Talbott*, 78 F.3d 1183, 1188 (7th Cir. 1996), abrogated on other grounds by *Dixon v. United States*, 548 U.S. 1 (2006).

Simmons with the government's reasons for not producing her. But that error was harmless because the result would have been the same even without any of Simmons's out-of-court statements. Accordingly, we AFFIRM the judgment of the district court.