NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 24, 2014
Decided September 16, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 13-2646

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 03-CR-30006 |
| ROBERT PRITCHARD, *Defendant-Appellant.* | Richard Mills, *Judge.* |

**O R D E R**

The sentence resulting from defendant Robert Pritchard's guilty plea on two drug-related charges included eight years of supervised release for each count, to run concurrently. In May 2013, his probation officer petitioned to revoke his release based on charges of domestic battery. After a hearing, the district court found that Pritchard had violated his release and sentenced him to two 46-month terms of imprisonment, to be served consecutively. Pritchard argues on appeal that the district court violated his due process rights and Federal Rule of Criminal Procedure 32.1(b)(2)(c) at his revocation hearing by denying him the opportunity to confront his wife and other witnesses against him and admitting hearsay evidence without first balancing the interests of justice. Because

we find that the district court did not comply with Rule 32.1(b)(2)(c) and that its failure to do so was not harmless, we reverse and remand for a new hearing.

## I. BACKGROUND

Robert Pritchard ("Pritchard") pled guilty to one count of manufacturing and one count of possessing methamphetamine and was sentenced to 96 months' imprisonment and eight years of supervised release on each count, but with his sentences to run concurrently. About three years into serving his term of supervised release, on May 28, 2013, the Probation Office petitioned to revoke Pritchard's release based on charges that he battered his wife, Pamela Pritchard, on July 27, 2012 and again on May 26, 2013. Springfield police records indicated that he also allegedly beat his wife on three other occasions in 2012 and 2013. The Violation Memorandum concluded that the applicable sentencing range was 46 to 57 months' imprisonment for each of the two terms of supervised release based on a criminal history category of V and a finding that his most serious conduct constituted a Grade A violation. (Grade A violations include crimes of violence punishable by more than one year of imprisonment, U.S.S.G. § 7B1.1, and upon a finding that such a violation occurred, the Sentencing Guidelines advise the sentencing court to revoke the defendant's supervised release and send him back to prison, U.S.S.G. § 7B1.3).

The district court held a revocation hearing, and the government called various law enforcement officials and probation officers to testify. The government stated that it did not call Mrs. Pritchard because she "did not want to testify," and argued that her statements should still be admitted through the police officers who took them because her statements were reliable. Defense counsel objected, arguing that Pritchard had a due process and statutory right to confront Mrs. Pritchard herself, but the judge denied the motion without explanation and allowed the officers to testify as to their conversations with Mrs. Pritchard. During their testimony, the officers referred to police reports, as well as photographs showing the injuries Mrs. Pritchard allegedly suffered as a result of the incidents, which the court admitted over objection. The court also allowed Pritchard's sister, Mary, to testify about an encounter she witnessed in November 2012, when Pritchard allegedly "picked [Mrs. Pritchard] up by her throat and slammed her to the floor." Defense counsel objected because the incident was not included in the petition to revoke, but the court allowed it. During cross-examination, the witnesses conceded that Mrs. Pritchard could have been lying, and Mary admitted that Pritchard had to stay with her on occasion because Mrs. Pritchard was also aggressive towards him. The government also presented medical records stating that Mrs. Pritchard told medical personnel that Pritchard beat her and she suffered pain, dizziness, and vomiting. At the close of the evidence, the court found "by

a preponderance of the evidence that Mr. Pritchard did commit the violations as set forth in the petition."

At sentencing, defense counsel argued that the evidence did not establish a Grade A violation and petitioned the judge to impose a concurrent sentence since the terms of supervised release were imposed concurrently. He also asked the judge to consider Pritchard's mental health issues, the contentious nature of his relationship with Mrs. Pritchard, and the fact that he was already facing prosecution by the state on the same charges. The court recognized Pritchard's mental health challenges, but concluded that the nature of his conduct outweighed it. He specifically stated that Mrs. Pritchard "couldn't even come here to testify she's so afraid" and that the "evidence of at least five domestic violence incidents in just over a year … can't be ignored." The judge imposed a 92-month sentence—consecutive 46-month terms for each count.

In September 2013, in the related state court case, Pritchard pled guilty to attempted aggravated battery and was sentenced to 24 months' imprisonment to run consecutive to the 92-month federal sentence. Pritchard appeals elements of his hearing and sentence.

## II. ANALYSIS

Pritchard argues that the district court violated his Fifth Amendment due process rights and Federal Rule of Criminal Procedure 32.1(b)(2)(c) by denying him the right to confront his wife, as well as the officers and medical professionals who wrote the reports that were introduced against him, without first finding that the interests of justice did not require them to appear. While it is true that the "full panoply" of constitutional rights do not apply in supervised release revocation hearings, *see Morrisey v. Brewer*, 408 U.S. 471, 489 (1972); *United States v. Kelley*, 446 F.3d 688, 691-92 (7th Cir. 2006), we do not address the constitutional issue raised here because Federal Rule of Criminal Procedure 32.1(b)(2)(c) is dispositive. That rule entitles an individual in a revocation hearing to "an opportunity to … question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(c).

And recently, after the district court had decided the instant case, we joined our sister circuits in holding that provision "requires a district court in a revocation hearing explicitly to balance the defendant's constitutional interest in confrontation and cross-examination against the government's stated reasons for denying them." *United States v. Jordan*, 742 F.3d 276, 280 (7th Cir. 2014); *United States v. Mosley*, — F.3d —, 2014 WL 3456854, at *4 (7th Cir. July 16, 2014). The district court did not conduct the required balancing test before admitting the hearsay evidence, which was in error. *See Jordan*, 742

F.3d at 280. We recognize that the district court was proceeding absent any guidance from our court that this balancing test was required. Yet we note that in future cases the government would be wise to alert the court that it must explicitly balance these interests before ruling to allow hearsay evidence.

Whether the error was harmless is a separate question, and a closer one. *See id.* (analyzing the government's harmless error argument after deciding that an error occurred). The government in this case argues that the hearsay evidence considered by the district court was reliable and sufficiently corroborated, and therefore that the balancing test was unnecessary. This is more an argument that the district court was not required to conduct the aforementioned balancing test rather than an argument that its failure to do so was harmless, but we will construe it as the latter since the government's briefing preceded our holding in *Jordan*. Even so, the argument fails.

If the government based its harmless error argument on the reliability of the hearsay evidence alone, it likely would be doomed to fail because "reliability cannot be the beginning and end of the 'interest of justice' analysis under Rule 32.1(b)(2)(c)." *Id.; see Mosley*, 2014 WL 3456854, at *4 ("[A] showing of reliability in the record on appeal does not mean there was no error, nor does it make the violation of Rule 32.1 harmless."). Instead, in addition to the reliability of the evidence, the district court should also consider "the availability of the witness[] and the availability of corroborating evidence or witnesses." *Jordan*, 742 F.3d at 280. So we will not conclude that the police report was sufficiently reliable to render harmless the failure to balance the defendant's interests in confrontation and cross-examination against the government's reasons for not producing the witness "without more information or corroborating evidence." *Id.* (finding error not harmless where no other pieces of evidence corroborated police report); *Kelley*, 446 F.3d at 692 (finding police report admissible hearsay where it was corroborated by physical evidence). Instead, we "look at the government's reasons for not affording confrontation" and "consider whether the hearsay would have been admitted had the district court correctly considered the competing interests." *Mosley*, 2014 WL 3456854, at *4.

In this case, unlike in *Jordan*, the government offered some evidence that reasonably could be construed as corroborating the police report and the responding officers' recitation of Mrs. Pritchard's alleged statements regarding the events that occurred on July 27, 2012 and May 26, 2013. The responding officers testified that Mrs. Pritchard told them that Pritchard violently grabbed her and slammed her head on the floor on the first occasion, and punched, dragged, and strangled her during the second incident. They also testified to their own observations of Mrs. Pritchard's condition on the dates in question. Officer James Kollins, the responding officer on July 27, 2012, testified that Mrs. Pritchard

was crying and generally hysterical, and had a cut over her right eye, an injury on the inside of her mouth, and a chipped tooth. The government introduced photographs showing these injuries. Kollins also testified that he witnessed blood on the floor and on Pritchard's cap, and he identified photographs of the same. The responding officer on May 26, 2013, Officer Tamara Walcher, testified that when she arrived at the Pritchards' residence, Mrs. Pritchard had scratches, bruises, and welts on her face, arms, and hands. The officer also identified photographs that were taken the same night which showed the injuries she mentioned. Probation officer Lynea Turner met with Mrs. Pritchard two days later to take more pictures, and Mrs. Pritchard told her that the bruises Turner saw on Mrs. Pritchard's eye, cheek, nose, neck, and shoulder were a result of Pritchard's abuse a couple of days earlier. The government also introduced medical reports which included notations that Mrs. Pritchard reported that she was beaten by her husband and that she was dizzy, vomiting, and experiencing pain in her face, chest, and abdomen.

Pritchard asserts that this evidence does not unequivocally corroborate Mrs. Pritchard's version of events. He argues that some of the injuries witnessed by the officers, such as Mrs. Pritchard's chipped tooth, could have occurred before the night in question. He also contends that Mrs. Pritchard was aggressive towards him and her injuries were a result of self-defense on his part, and that the blood on the floor could have been his. In essence, he argues that Mrs. Pritchard could have been lying in all of her reports. He should have been given the opportunity to confront and cross-examine Mrs. Pritchard, he says, to test the truthfulness of her alleged statements—something to which the responding officers could not sufficiently attest.

We cannot agree with Pritchard that the district court definitively should have required the government to produce Mrs. Pritchard. We leave that determination to the district court's discretion in conducting the balancing test. But we cannot unequivocally say that the district court would have made the same decision not to require Mrs. Pritchard to appear and to admit the hearsay evidence had the court considered Pritchard's reasons for requesting the opportunity to confront and cross-examine Mrs. Pritchard, and weighed those interests against the government's proffered reasons for not producing her.[1] In the

_____

[1] The government argues on appeal that Mrs. Pritchard's statements to police officers could be admitted as excited utterances. But we do not decide this point because the government did not make this argument before the district court, and indeed the district court did not admit the documents under that exception. Instead, the district court allowed the testimony based on its perception that hearsay evidence was

(continued...)

absence of solid evidence that the district judge would have come to the same conclusion had he balanced the interests at play, we do not hold harmless its failure to do so. We also cannot find that the error was harmless on the alternative ground that "the violation of supervised release would have been found even [if the court had excluded] the hearsay evidence." *Mosley*, 2014 WL 3456854 at *4. Without the officers' testimony and police reports regarding Mrs. Pritchard's version of events, the court may not have been satisfied that the preponderance of the evidence supported a finding that Pritchard violated his supervised release.

While we emphasize that Rule 32.1 recognizes that an individual in a revocation hearing has a strong interest in confronting the witnesses against him, *see* Fed. R. Crim. P. 32.1(b)(2)(c), 2002 Advisory Committee Note; *United States v. Carthen*, 681 F.3d 94, 100 (2d Cir. 2012), nothing in our opinion is intended to prevent the district court from concluding that the interests of justice militate against requiring Mrs. Pritchard to testify. The court may find good cause for denying Pritchard the opportunity to confront her. It may still admit the hearsay evidence in light of the nature of the charges at issue and the reality that victims of domestic abuse often do not want to testify. *See Carthen*, 681 F.3d at 101. But the government's statement that it "elected not to call her" is insufficient alone to defeat Pritchard's interests. The prosecutor did suggest that Mrs. Pritchard may have been scared of Pritchard and intimidated by him, and that she did not want to testify. But there is no indication of when she was asked to testify or how firm her refusal was. *See id.* (affirming the district court's decision not to require the government to produce the alleged victim of domestic abuse in part because she repeatedly refused to testify, including "just prior to the hearing"). The government probably failed to delve into these questions because it was under the erroneous impression that producing the witness was not necessary as long as the hearsay evidence was reliable. The district court was under the same impression, and did not explicitly consider these proffered reasons in deciding not to require the government to produce Mrs. Pritchard. In other words, it did not rely on Mrs. Pritchard's alleged fear in deciding to admit the hearsay evidence. The court's statement that Mrs. Pritchard "couldn't even come here to testify she's so afraid," was made much later in the hearing, in the context of determining the appropriate sentence, not in weighing Pritchard's interests in confronting her against the government's interests in not having to produce her.

We leave these issues for the district court's considerations on remand. And as we held in *Jordan*, the government is free to present new evidence on remand supporting its

---

[1](...continued)
admissible as long as it was reliable.

interest in not producing the witness. *See Jordan*, 742 F.3d at 282. We simply hold that the court must seriously consider Pritchard's interests before crediting the government's rationale for denying him the opportunity to confront Mrs. Pritchard and using her alleged statements to support a finding that Pritchard violated the terms of his supervised release.

Pritchard also claims that he should have been given the opportunity to confront and cross-examine the medical professionals who wrote the medical reports introduced against him as well as the officers who wrote the police reports for Pritchard's other alleged acts of battery–including those in February 2012, October 2012, and March 2013. We make no comment on whether the statements contained in those documents constitute hearsay or whether the balance of interests should weigh in favor of Pritchard in confronting the officers and medical professionals. But we do suggest that, on remand, the district court should also balance the defendant's and government's competing interests before deciding to admit any other hearsay evidence.

Because we hold that it was error for the district court to admit the hearsay without balancing Pritchard's and the government's interests, we do not reach Pritchard's arguments on whether the evidence supported finding that he committed a Grade A violation. But we take a moment to comment on his argument that his 92-month sentence was plainly unreasonable because it was "twice as high as the low end of the [46 to 57 months] advisory range," in the event that, after a new hearing, the district court again finds that Pritchard violated his supervised release. Pritchard's argument ignores the fact that he was serving two concurrent terms of supervised release for two Class A felonies. The district court acted within its discretion in imposing separate, consecutive prison terms upon revoking Pritchard's concurrent terms of supervised release. *See* 18 U.S.C. § 3583(e)(3) (maximum sentence upon revocation of a term of supervised release for a Class A felony is five years for *each* term of supervised release); *United States v. Deutsch*, 403 F.3d 915, 918 (7th Cir. 2005) (holding that sentencing statutes give district courts discretion to impose consecutive prison terms upon revocation of concurrent terms of supervised release). Having considered the § 3553(a) factors and determined that a serious sentence was needed to deter Pritchard and protect the public, the court's decision to sentence Pritchard to the bottom of the applicable advisory range for each count, to run consecutively, was not plainly unreasonable.

Finally, Pritchard argues that his sentence was substantively unreasonable because the court relied in part on hearsay contained in police reports from the three other aforementioned incidents in 2012 and 2013, even though they were not charged in the petition to revoke. He claims on appeal that the reports were not reliable. Before the district court, Pritchard only argued that the court should not consider the reports because they

were not contained in the petition and were akin to Rule 404(b) propensity evidence. But, in sentencing, "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008). Pritchard's argument fails because he did not object to the reports' accuracy before the district court. *See United States v. Lopez-Hernandez*, 687 F.3d 900, 902 (7th Cir. 2012) (finding that judge can rely on the facts contained in police reports in sentencing when the defendant fails to object to their content). We cannot say that Pritchard's sentence was unreasonable.

### III. CONCLUSION

The judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this order.