23-7648
*United States v. Watkins*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of March, two thousand twenty-five.

PRESENT:
>    ROBERT D. SACK,
>    BETH ROBINSON,
>            *Circuit Judges*,
>    JOHN G. KOELTL,
>            *District Judge*.*

_____

UNITED STATES OF AMERICA,

>    *Appellee*,

>            v.                                             No. 23-7648

ANTHONY WATKINS, AKA ACE,

>    *Defendant-Appellant*.

_____

---

* Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

FOR APPELLANT: Molly K. Corbett, Assistant Federal Public Defender, *for* Lisa A. Peebles, Federal Public Defender for the Northern District of New York, Albany, NY.

FOR APPELLEE: Richard D. Bellis, Rajit S. Dosanjh, Assistant United States Attorneys, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on October 26, 2023, is **AFFIRMED.**

Defendant-Appellant Anthony Watkins appeals from an October 2023 judgment of revocation and sentence for violating the terms of his supervised release. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

In September 2019, Watkins began a three-year term of supervised release following his imprisonment for distributing heroin. He soon ran into issues complying with the terms of his release. In response to a series of alleged

violations, Watkins agreed to several successive modifications of the supervised release terms. Eventually, in February 2022, based on Watkins's admission to two violations, the district court issued a judgment revoking his supervised release and sentencing Watkins to 18 months' imprisonment to be followed by 18 months of supervised release.

In March 2022, while Watkins was serving his federal term of imprisonment, Watkins pled guilty in state court to harassment in the second degree against A.D., an individual whom he had repeatedly contacted in violation of a protection order. He was sentenced to time served, and the state court issued a permanent order of protection barring Watkins from contacting A.D. until March 2024.

Watkins completed his term of imprisonment and began his new term of supervised release on March 24, 2023. As before, a pattern of violations leading to voluntary modifications of his conditions followed.

In September 2023, the Probation Department reported that Watkins's compliance with the terms of his release had been "poor." App'x 58. Among other things, Probation reported that Watkins was found to be at A.D.'s house—in violation of the protection order—in July 2023. And, according to the report from Probation, one of Watkins's former romantic partners informed Probation that

Watkins had slammed a car door on her leg and threatened to kill her. That woman also got an order of protection against Watkins in state court.

Subsequently, A.D.'s sister reported to Probation that Watkins assaulted A.D., triggering an investigation by Probation Officer Dan Casullo. Watkins was subsequently charged with several violations of the terms of his supervised release—including two charges related to his conduct against A.D.: Violation One was based on Watkins's alleged assault in the third degree under New York law for punching A.D. in the face and stomach in September 2023, and Violation Two was based on aggravated criminal contempt under New York law resulting from Watkins's violation of the order of protection concerning A.D. As relevant to this appeal, Watkins was also charged with violations for committing aggravated unlicensed operation of a motor vehicle in the second degree under New York law for driving with a suspended license, and for failing to timely report to Probation his interaction with law enforcement arising from a traffic stop within 72 hours as required by the conditions of his release.[1]

---

[1] The government dismissed a charge arising from Watkins's repeatedly calling A.D. in violation of the state law order of protection, and the court concluded the government failed to prove an additional charge that Watkins was found to possess marijuana during a traffic stop.

The court held two revocation hearings in October 2023, during which Watkins chose to represent himself. The court found Watkins guilty of the above violations and sentenced Watkins to a term of 24 months' imprisonment to be followed by three years of supervised release.

On appeal, Watkins challenges (1) the court's reliance on hearsay testimony to conclude that Watkins assaulted A.D., and (2) the substantive reasonableness of the three-year term of supervised release. We consider each challenge in turn.

## I. Admission of Hearsay

Watkins challenges the district court's reliance on hearsay testimony to support its revocation decision.

Although the Confrontation Clause of the Sixth Amendment does not apply to revocation hearings, *United States v. Peguero*, 34 F.4th 143, 154 (2d Cir. 2022), a defendant is entitled to "an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear," Fed. R. Crim. P. 32.1(b)(2)(C).[2] In determining whether good cause exists, "the court must balance, on the one hand, the defendant's interest in confronting

---

[2] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

5

the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay." *Peguero*, 34 F.4th at 154. "We review a district court's balancing of the Rule 32.1 factors for abuse of discretion." *Id.*

Watkins argues that the district court did not apply the correct Rule 32.1 standard in allowing hearsay testimony about his alleged assault of A.D. because, according to Watkins, it weighed his confrontation rights against only the reliability of the government's evidence and not also against the government's reasons for not producing A.D. Watkins also argues that the court improperly weighed the Rule 32.1 factors in favor of admissibility. We disagree.

Officer Casullo testified that, after receiving a report in September 2023 that Watkins was in a physical altercation with A.D., Casullo visited A.D. at her home. Casullo observed that A.D. had a black eye and bruises on her stomach. Without objection, the government introduced six photographs of A.D. taken during that visit, which showed extensive bruising on A.D.'s abdomen and face as well as a large black eye.

Casullo further testified that A.D. told him that her injuries resulted from Watkins punching her. Moreover, the government introduced a written statement

written by Casullo at A.D.'s direction and signed by A.D. under penalty of perjury after Casullo reviewed it with her. The statement recounted that while Watkins was talking with A.D. at her home, he punched her in the face with his fist and then punched her in the stomach so hard that she fell to the floor.

Watkins objected to the admission of Casullo's hearsay testimony and A.D.'s written out-of-court statement. In response, the government explained that it had subpoenaed A.D. for the hearing but that she did not appear. The court overruled Watkins's objection, determining that though "the right of confrontation is an important right[,] . . . the reliability of all of the other evidence," particularly the photographs, weighed in favor of admitting the hearsay material. App'x 107:17–22, 108:8–16. The court also explained that there "could be many reasons" for A.D.'s absence, including "concerns that [she] might have about being here in person in light of the allegations that she made." *Id.* 108:3–7.

At the second revocation hearing, in response to Watkins's renewed objection to the court's admission of A.D.'s statements, the court recalled Casullo to the stand. Casullo testified that he personally took A.D.'s written statement and that A.D. "never wavered on her statements to [him] that she was assaulted by [Watkins]." App'x 149:13–16. Casullo also testified that a subpoena to appear at

the revocation hearing was served on A.D. and that she confirmed receipt of the summons though did not appear for the hearing. In addition, Casullo explained that A.D. told him she had not reported the September 2023 incident to the police because she was "scared" and had previously reported an assault to the police only for the perpetrator to have been released "soon after" to assault her again. *Id.* 146:8–13.

The court reiterated its understanding that it needed to "carefully balance [Watkins's] confrontation rights with the reliability of the other evidence" and explained that the photographs of A.D. in the record were "very disturbing," showing "extraordinary" and "severe" bruising. App'x 156:16–57:2. The court further stated:

> As is often the case in domestic violence matters, the victims clearly fear the individual who inflicted the punishment on them, and in accepting hearsay in this case, I do consider the fact that although A.D. was subpoenaed, she certainly may have feared more punishment to be inflicted upon her if she came to this court to testify. Unfortunately, that's not unusual in domestic violence cases.

*Id.* 157:16–23.

Based on this record, we conclude that the district court applied the correct standard. The court recognized Watkins's confrontation right as "important" and

8

weighed it against (1) the reliability of other evidence, including the photographs, and (2) A.D.'s failure to appear in response to a subpoena and her apparent fear of testifying against Watkins. Those are the factors the court is required to consider pursuant to Rule 32.1. *See, e.g.*, *Peguero*, 34 F.4th at 154.

Watkins argues that the district court relied on "conjecture" in determining that A.D. feared testifying at the revocation hearings. Appellant's Br. at 38. But Officer Casullo's testimony that A.D. said she did not report Watkins to the police because she feared being assaulted by him again once he was released supports a reasonable inference that A.D. had an "ongoing fear of and intimidation by" Watkins, and "[n]o explicit statement of fear is required" related to A.D.'s failure to appear at the hearing itself. *Peguero*, 34 F.4th at 155.

Watkins also argues that the government's explanation for A.D.'s absence was insufficient because the government subpoenaed her only for the first day of testimony. But the government rested its case at the end of the first hearing; it thus had no obligation to serve a subpoena for A.D. to testify at the second day of the hearing, which was continued only at Watkins's request so he could have more time to gather his own evidence.

Nor do we see any abuse of discretion in the court's conclusion that, on balance, good cause existed to admit the hearsay materials. We have held that good cause justifying the admission of hearsay at a revocation hearing exists "when a defendant has a history of violent conduct that makes reprisal against the declarant a possibility." *United States v. Carthen*, 681 F.3d 94, 101 (2d Cir. 2012) (collecting cases). And the hearsay materials—which included a sworn statement by A.D.—were corroborated by the photographs of A.D.'s injuries and Casullo's non-hearsay testimony, supporting the district court's conclusion that the offered hearsay was reliable. *See Peguero*, 34 F.4th at 156 (no abuse of discretion in concluding that a victim's sworn statement was reliable because it was corroborated by, among other things, "her physical injuries"); *see also Carthen*, 681 F.3d at 100 (no abuse of discretion in admitting hearsay material that was "detailed, credible, and sometimes under oath . . . [and] also corroborated by other evidence," including evidence of victim's physical injuries).

## II. Substantive Reasonableness

We likewise reject Watkins's challenge to the substantive reasonableness of the term of supervised release the court imposed. When reviewing a district court's sentencing decision for substantive reasonableness, we consider the length

10

of the sentence imposed in light of all the statutory sentencing factors in 18 U.S.C. § 3553. *United States v. Verkhoglyad*, 516 F.3d 122, 127 (2d Cir. 2008). "We will . . . set aside a district court's *substantive* determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (emphasis in original).

Watkins argues on appeal that the term of supervised release is substantively unreasonable because he is not "amenable individually and historically to supervision." Appellant's Br. at 49. In other words, Watkins argues that, because he has repeatedly failed to comply with the terms of his release, the district court erred in imposing any more supervision.

We disagree. In addition to recognizing Watkins's pattern of violations "beginning almost immediately after his release from custody" and the gravity of Watkins's conduct, App'x 163:16–21, the court also found that the "need to protect the public from further crimes" by Watkins was great in this case, *id.* 164:3–8. *See* 18 U.S.C. § 3553(a)(2)(C); 18 U.S.C. § 3583(c) (stating that, in imposing a term of supervised release, courts "shall consider," among other things, the factor set forth in § 3553(a)(2)(C)). In particular, the court reasonably found that Watkins's non-

compliance made him "a danger to the community." App'x 164:17–23. Especially given these concerns, the district court's decision here fell "within the range of permissible decisions," and was thus substantively reasonable. *Cavera*, 550 F.3d at 189.

* * *

For these reasons, the District Court's judgment is **AFFIRMED**.[3]

FOR THE COURT:<br>Catherine O'Hagan Wolfe, Clerk of Court

---

[3] Without much discussion, Watkins argues that the court erred in finding him guilty of Violation 4, which charged him with committing new criminal conduct, specifically aggravated unlicensed operation of a motor vehicle in the second degree. Watkins argues that this conduct is not a "crime" under New York law. Appellant's Br. at 31. He is wrong. *See* N.Y. Veh. & Traf. Law § 511(2)(b) (identifying aggravated unlicensed operation of a motor vehicle in the second degree as a misdemeanor crime); *id.* § 1801 (setting forth range of imprisonment for misdemeanor violations of New York's Vehicle and Traffic Law, including under § 511).