In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1488

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEITH D. JORDAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 98 CR 30095 — **Sue E. Myerscough**, *Judge.*

ARGUED NOVEMBER 15, 2013 — DECIDED JANUARY 28, 2014

Before FLAUM and HAMILTON, *Circuit Judges*, and KAPALA,
*District Judge.*[*]

HAMILTON, *Circuit Judge.* Appellant Keith D. Jordan was
sentenced to 24 months in prison for violating the conditions
of his supervised release from federal custody. He challenges

---

[*] Hon. Frederick J. Kapala, of the Northern District of Illinois, sitting by
designation.

the revocation of his supervised release, arguing that the district court erred by considering hearsay evidence without making the "interest of justice" finding required by Federal Rule of Criminal Procedure 32.1(b)(2)(C) if a defendant is denied the right to question any adverse witness in a revocation hearing. He claims the error violated both the Rule and his limited right to confront witnesses under the Due Process Clause of the Fifth Amendment. We find that the district court failed to comply with Rule 32.1(b)(2)(C) and that the error was not harmless. Accordingly, we reverse and remand without reaching Jordan's constitutional claim. See *Hagans v. Lavine*, 415 U.S. 528, 546 (1974) (statutory claim should ordinarily be decided before constitutional claim); *Hudson v. Chicago Teachers Union Local No. 1.*, 743 F.2d 1187, 1199 (7th Cir. 1984) (Flaum, J., concurring); *United States v. Herman*, 589 F.2d 1191, 1207 (3d Cir. 1978) (Garth, J., concurring in part and dissenting in part).

I.   *Factual and Procedural Background*

Keith D. Jordan was released from federal prison on June 28, 2011 and began serving a three-year term of supervised release. The conditions for his release included that Jordan could not leave the judicial district without permission, associate with a felon or person engaged in criminal activity, or commit a federal, state, or local crime. Jordan was also required to report within 72 hours any arrest or questioning by law enforcement.

On December 7, 2012, a probation officer filed a petition to revoke Jordan's supervised release. Jordan had been arrested in Marion County, Texas, by Texas Trooper Carlos Wilson on November 30 and charged with marijuana possession. The

petition alleged that Jordan had violated the conditions of his release in four ways: by leaving the judicial district without permission; by associating with Robert Wallace, a felon; by committing a new offense (possession of 30 pounds of marijuana); and by failing to report his arrest within 72 hours.

The district court held a revocation hearing on February 25, 2013. The federal Sentencing Guidelines classify supervised release violations as Grade A, B, or C based on their severity. U.S.S.G. §7B1.1. If a Grade A or B violation has occurred, the Guidelines advise that supervised release should be revoked and the defendant returned to prison. §7B1.3(a)(1). For a Grade C violation (the least severe), the Guidelines advise the court to be more flexible: it may revoke, extend, or modify the conditions of supervised release. §7B1.3(a)(1)–(2) (2013). Jordan admitted the three Grade C violations (leaving the judicial district, associating with a felon, and failing to report his arrest), but disputed that he had possessed marijuana with intent to distribute, a Grade A violation.

To prove possession, the government relied primarily on Trooper Wilson's police report. The government also introduced video footage of Wallace's flight from the police and the Texas grand jury's indictment of Jordan. Jordan's lawyer objected to the introduction of the police report on due process grounds. The district court overruled the objection without explanation. The probation officer then began testifying about the events in Texas based on his review of the police report. When Jordan's lawyer asked the probation officer whether Trooper Wilson was available to testify, the government objected and said: "Trooper Wilson would have been available if I had contacted him. I didn't contact him because the rules of

evidence don't require that he be here. So I object to this question." The district court sustained the objection, again without explanation. Jordan's lawyer repeated his Fifth Amendment concerns in his closing argument.

The district court found that Jordan had possessed marijuana with intent to distribute and sentenced him to 24 months in prison. The court made no finding that the police report was reliable or that good cause existed for its admission, and did not discuss Rule 32.1(b)(2)(C).

Jordan did not specifically refer to Rule 32.1(b)(2)(C) in his objections. However, the government does not argue that the argument was waived, and given the close connection between Rule 32.1(b)(2)(C) and Fifth Amendment due process requirements in revocation hearings, we find that Jordan's objections adequately preserved the Rule 32.1(b)(2)(C) issue for our review. See *United States v. LeBlanc*, 175 F.3d 511, 515 (7th Cir. 1999) (Rule 32.1 largely codified *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972), which defined Fifth Amendment due process rights, including a limitedd confrontation right, in parole revocation hearings).

II. *Analysis*

On appeal, Jordan argues that the district court erred in admitting Trooper Wilson's report without finding that it was reliable or making an "interest of justice" finding under Rule 32.1(b)(2)(C). He claims that the failure to do so violated both Rule 32.1(b)(2)(C) and his limited confrontation right under the Due Process Clause of the Fifth Amendment. Though the two grounds are closely related, we base our decision on the rule.

Federal Rule of Criminal Procedure 32.1(b)(2)(C) provides that at a revocation hearing, the defendant is entitled to "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear."

The "interest of justice" requirement was added in 2002. The accompanying Advisory Committee Note stated: "The court is to balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it." All circuits that have addressed the question now require district courts to perform this balancing test before admitting hearsay evidence in revocation hearings. See, *e.g.*, *United States v. Doswell*, 670 F.3d 526, 530 (4th Cir. 2012); *United States v. Lloyd*, 566 F.3d 341, 344 (3d Cir. 2009); *United States v. Williams*, 443 F.3d 35, 45 (2d Cir. 2006); *United States v. Rondeau*, 430 F.3d 44, 48 (1st Cir. 2005); *United States v. Martin*, 382 F.3d 840, 844–45 (8th Cir. 2004); *United States v. Stanfield*, 360 F.3d 1346, 1360 (D.C. Cir. 2004); *Barnes v. Johnson*, 184 F.3d 451, 454 (5th Cir. 1999); *United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999); *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994); see also *Curtis v. Chester*, 626 F.3d 540, 546 (10th Cir. 2010) (declining to adopt the balancing test instead of a reliability test because the hearsay statements at issue would be admissible under either test, but noting that the amended rule "appears to endorse a balancing test"); *United States v. Jackson*, 422 Fed. Appx. 408, 410–11 (6th Cir. 2011) (suggesting that in applying Rule 32.1(b)(2)(C), court should conduct balancing test, but holding that any error was harmless). Jordan urges us to join these circuits and adopt the balancing test for Rule 32.1(b)(2)(C).

The balancing test correctly requires the district court to consider not just the government's reasons for offering hearsay but also a defendant's interest in confronting adverse witnesses. That interest is not to be taken lightly. A person on parole or supervised release has a due process right, albeit a limited one, to confront and cross-examine adverse witnesses. *Morrissey*, 408 U.S. at 489. Cross-examination provides an opportunity "to expose a witness's motivation for testifying, his bias, or his possible incentives to lie." *United States v. Recendiz*, 557 F.3d 511, 530 (7th Cir. 2009); see also *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Where, as here, a person's liberty is at stake, the opportunity to confront witnesses and reveal problems with their testimony is an important component of due process. When liberty is at stake, the limited right to confront and cross-examine adverse witnesses should not be denied without a strong reason.

At the same time, a revocation hearing is not a trial, so the defendant's interests are less compelling than for someone still presumed innocent. For example, where live testimony would be difficult or burdensome to obtain, confrontation need not be face-to-face. Video conferencing could allow a distant witness to testify and face cross-examination with minimal inconvenience and expense. Where such inexpensive means of communication are available to the district court, a remote witness should generally be expected to appear. This would be true even if the hearsay seems reliable. There would often be no good reason to use hearsay instead of the witness's live testimony under such circumstances.

Of course, other factors may be relevant in determining whether to allow hearsay evidence in a revocation hearing. The

reliability of the evidence, the availability of the witness, and the availability of corroborating evidence or witnesses may all be relevant. All relevant considerations can be subsumed under the Rule 32.1(b)(2)(C) general requirement that the district court consider, before allowing hearsay in revocation hearings, whether the government has established that the interests of justice call for denying confrontation and cross-examination.

We therefore join the other circuits that have ruled on the question and hold that Rule 32.1(b)(2)(C) requires a district court in a revocation hearing explicitly to balance the defendant's constitutional interest in confrontation and cross-examination against the government's stated reasons for denying them. This requirement lines up well with the *Morrissey* requirement that the courts specifically find good cause to admit hearsay in parole revocation hearings. 408 U.S. at 489. Admitting Trooper Wilson's report in this case without conducting the required balancing was an error.

The government urges us to find the error harmless because the police report was reliable. We discuss the government's reliability arguments in detail because they were the focus of the briefing. However, as explained above, reliability cannot be the beginning and end of the "interest of justice" analysis under Rule 32.1(b)(2)(C), and we do not mean to imply that finding the hearsay reliable would alone suffice to support its admission under the rule. In any case, we are unable to conclude on appeal that the police report admitted

in this case was so reliable with respect to Jordan that the error was harmless.[1]

Police reports are not presumed to be categorically reliable. See *Downie v. Klincar*, 759 F. Supp. 425, 428 (N.D. Ill. 1991). As Judge Moran explained in *Downie*, police reports can be adversarial in nature, arising from a confrontation between a suspect and a police officer. They can also be advocacy pieces, written for prosecutors to use in deciding whether or how to charge a suspect. A police officer thus may have many reasons to present events in a non-neutral light and cannot be assumed to have recorded the relevant events in an entirely neutral way. Even the most candid witness will naturally remember and recount events in a light that supports the story he is trying to tell. These concerns led Congress to exclude police reports from the hearsay exception for public records and reports found in Federal Rule of Evidence 803(8) when offered in criminal cases. *Id.* Although the rules of evidence do not apply to revocation hearings, police reports are not necessarily any more reliable in revocation hearings than they are at trial, so Congress' concerns apply to both contexts. *Id*. at 429–30. We cannot simply assume that any police report, including this one, is reliable without more information or corroborating evidence.

The government argues that we should find that Trooper Wilson's report is reliable because it is detailed. The level of detail included in the report does not allay our concerns about

---

[1] Our observation does not necessarily apply to Wallace, whose supervised release was revoked in a different hearing by a different district judge, and whose appeal is being heard separately in case No. 13-2151.

its accuracy or neutrality. Testimony is often detailed, and we do not assume it is impartial or correct on that basis alone. If the district judge had determined that the report was reliable based on the level of detail it contained, we would review that determination for an abuse of discretion, and perhaps that finding would pass muster. That is not the situation we face. Where the district court did not determine the report was reliable, its detail alone does not allow us to hold independently that it was.

The government also argues that the report was sufficiently corroborated by Jordan's admission of the Grade C violations, his parole officer's testimony, his Texas grand jury indictment, and the video recording of Wallace's flight in the car. In our view, though, none of the evidence sufficiently corroborates the report's account of the Grade A violation to allow us to determine on appeal that the evidence was so reliable as to render the district court's error harmless. Jordan's admission of the Grade C violations does not corroborate that the Grade A violation occurred, except to show he was present with Wallace in the car. The probation officer's testimony was based entirely on his telephone conversations with Trooper Wilson and his reading of the police report. He had no independent knowledge of the events, so his testimony merely repeated rather than corroborated the police report. The Texas indictment shows that Jordan was indicted for possessing marijuana, but it does not corroborate the report's account of what happened or establish his guilt. As best we can tell, it does not provide any information independent of Trooper Wilson's account of events. The video recording depicts Wallace's flight, but Jordan had already exited the car when Wallace fled, so the

video has little direct bearing on whether Jordan possessed marijuana with intent to distribute. None of this evidence, taken together or separately, corroborates the police report sufficiently for us to find on appeal that the report was so reliable regarding Jordan that the error was harmless.

The government argues that a comment by Jordan to an arresting officer, recorded at the end of the video footage, admitted his guilt and thus corroborated the police report and established the Grade A violation. Jordan asked what he would be charged with. The officer told him that he did not know. Jordan then said: "He said cannabis, marijuana, whatever. So that's what's in there, so whatever." This vague remark, presumably referring to a conversation between another officer and Jordan, is not a clear admission of guilt. It could be either an admission or simply a description of what the arresting officer said was in the vehicle. Either reading is plausible. We would need more clarity to conclude independently on appeal that the police report was reliable. See *United States v. Kelley*, 446 F.3d 688, 692 (7th Cir. 2006) (hearsay contained in police report was reliable where preparing officer testified and physical evidence from the scene corroborated the hearsay).

Finally, the government argues that *Kelley* compels a different result. See 446 F.3d at 692–93 (affirming revocation of supervised release based on hearsay; defendant raised constitutional challenge but did not rely on Rule 32.1). In *Kelley*, however, the officer who had been dispatched to the scene and prepared the police report testified about his encounter with the declarants of the hearsay, and physical evidence from the scene corroborated their hearsay statements. *Id.* at 692. Given the wealth of clear corroborating evidence, we were able to

determine on appeal that the hearsay was reliable. The evidence in this case is quite different, without the strong corroborating evidence in *Kelley*. It does not allow us to find in the first instance on appeal that the police report was reliable.[2]

Because the government focused on the reliability of the police report in arguing that the district court's error was harmless, we do not decide conclusively whether the government had good cause to deny Jordan the right to confront Trooper Wilson or whether that cause outweighed Jordan's constitutional interest in confrontation and cross-examination. We leave those questions for the district court on remand. We reject Jordan's suggestion that the government be barred from introducing additional evidence on remand. The government's behavior, while mistaken, does not require such measures. See *United States v. Hagenow*, 487 F.3d 539, 542 (7th Cir. 2007) (allowing the government to present additional evidence on remand was not error where "no controlling case law deemed the government's method of proof [at the initial sentencing hearing] improper"). If the district court had not made the error, the government would have been able to try to obtain Trooper Wilson's testimony either in person or by video conference. Once the error is corrected, the government will be free to offer Trooper Wilson's testimony, as well as potentially corroborating evidence, such as a laboratory report or the Texas conviction, to support the police report on remand.

---

[2]     *Kelley* addressed confrontation rights under the Fifth and Sixth Amendments but did not mention Rule 32.1(b)(2)(C), so the case informs rather than controls the outcome in this case. See *Kelley*, 446 F.3d at 692.

Because we hold that Rule 32.1(b)(2)(C) was violated and the error was not harmless, we do not reach Jordan's constitutional claim under the Fifth Amendment.

The judgment of the district court is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.