**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**

**Chicago, Illinois 60604**

Argued December 6, 2013

Decided March 4, 2014

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

THOMAS M. DURKIN, *District Judge*[*]

No. 13-2151

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 92-CR-30068 |
| ROBERT L. WALLACE, *Defendant-Appellant*. | Richard Mills, *Judge*. |

**O R D E R**

In United States v. Jordan, we held for the first time that Federal Rule of Criminal Procedure 32.1(b)(2)(C) requires a district court holding a hearing to consider revoking

---

[*] Of the Northern District of Illinois, sitting by designation.

a defendant's supervised release to explicitly balance the defendant's constitutional interest in confrontation and cross-examination of adverse witnesses against the government's stated reasons for denying the defendant that right. No. 13-1488, —F.3d —, 2014 WL 292396, at *3 (7th Cir. Jan. 28, 2014). In *Jordan*, we reversed the district court's revocation of Jordan's supervised release and remanded for a new revocation hearing, finding first, that the district court violated Rule 32.1(b)(2)(C) by admitting hearsay evidence without conducting the balancing required by Rule 32.1(b)(2)(C), and second, that the district court's error was not harmless. We reach the same conclusion in this case.

Robert Wallace pled guilty in federal court to a narcotics crime in 1993 and was sentenced to 235 months of imprisonment, followed by 60 months of supervised release. While in federal custody, in 1994, Wallace pled guilty to a state count of murder and was sentenced to 28 years of imprisonment, a term that ran concurrently with Wallace's federal sentence and which Wallace completed while he remained in federal custody. Wallace was released from federal prison in 2009 and, in turn, began serving his term of supervised release.

On December 14, 2012, Wallace's probation officer filed a petition to revoke Wallace's supervised release based on information she received from authorities in Marion County, Texas regarding a traffic stop that occurred on November 3, 2012. Similar to the violations alleged in *Jordan*, the petition alleged that Wallace had violated the conditions of his release by: (1) committing a new criminal offense (possession of 30 pounds of marijuana); (2) leaving the judicial district without permission; (3) associating with Keith Jordan, a felon;[1] and (4) failing to report within 72 hours his contact with law enforcement on November 3, 2012.

As it did in Jordan's revocation hearing, the government sought to introduce a police report written by Texas Trooper Carlos Wilson memorializing the events of November 3, 2012 to prove the supervised release violations—the most serious of which was the marijuana possession violation. According to the police report, on that night, Trooper Wilson conducted a traffic stop of a vehicle that was being driven by Jordan. During the stop, Trooper Wilson asked Jordan to exit the vehicle, while Wallace, the

---

[1] Keith Jordan was the defendant in the aforementioned *Jordan* appeal whose supervised release was revoked based on the same November 3, 2012 incident.

passenger in the vehicle, remained inside.[2] After Trooper Wilson questioned Jordan, Trooper Wilson proceeded to question Wallace who handed Trooper Wilson his state-issued photo identification card. Wallace's answers to Trooper Wilson's questions and Trooper Wilson's identification of Wallace based on Wallace's identification card were noted in Trooper Wilson's police report.[3] Also contained in Trooper Wilson's report was Jordan's statement that his family in Nacogdoches County consisted of some "Wallace's" and "Jordan's" and that his "cousin Robert" was in the car with him. At some point, while Jordan spoke with Trooper Wilson outside the vehicle, Wallace got into the driver's seat and fled in the car. Following a high-speed chase with police in pursuit, Wallace escaped on foot into the woods. The following day, Trooper Wilson ran a criminal history check based on Wallace's identification card, and a warrant was issued for Wallace's arrest. Wallace was later arrested with Jordan on December 21, 2012 in Nacogdoches County, Texas.

Prior to Wallace's revocation hearing, the government notified the district court of its intent to introduce Trooper Wilson's police report at the revocation hearing instead of subpoenaing Trooper Wilson from Texas to testify.[4] The government also informed the district court of its intent to introduce video footage of the traffic stop, which showed Wallace's flight from police (but did not show his face); the Texas grand jury indictment of Wallace; and the police report detailing Wallace's arrest with Jordan on December 21 as corroborative evidence supporting Trooper Wilson's police report of November 3.

Wallace's lawyer objected to the introduction of Trooper Wilson's police report, which also recounted the additional hearsay statements of Jordan identifying Wallace as the passenger in the vehicle, as a violation of his right to due process and of Rule 32.1(b)(2)(C). Relying on *United States v. Kelley*, 446 F.3d 688 (7th Cir. 2006), the district court expressly declined to apply the balancing test that is now required (as per our de-

---

[2] Wallace denies that he was the passenger and cites the passenger's verbal self-identification and production of a photo identification card as two instances of unreliable hearsay. As we note below, the passenger fled the scene and was not apprehended. Trooper Wilson has never been asked to confirm that Wallace was in fact the passenger, for example, by having the Trooper view Wallace's booking photo and verify that Wallace is the person he saw in the vehicle that night.

[3] At oral argument, the government stated that Wallace's identification card was not presently in its custody.

[4] The same police report was admitted as evidence in Jordan's revocation hearing.

cision in *Jordan*, 2014 WL 292396, at *3) and found that Trooper Wilson's police report "bore substantial guarantees of trustworthiness such that calling Trooper Wilson from out of state to testify [was] unnecessary." Wallace's attorney renewed his objection to the admission of Trooper Wilson's police report prior to the revocation hearing, an objection the district court overruled. After considering the November 3, 2012 and December 21, 2012 police reports, along with the other evidence presented, the district court found that Wallace violated all four conditions alleged in the petition to revoke and sentenced him to 60 months of imprisonment.

Under Rule 32.1(b)(2)(C), a defendant at a revocation hearing is entitled to "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." In *Jordan*, we joined the majority of circuits in holding that the "interest of justice" language in the Rule requires district courts, before admitting hearsay evidence in revocation hearings, to explicitly balance the defendant's constitutional interest in confrontation and cross-examination of adverse witnesses against the government's good cause for denying it. 2014 WL 292396, at *2-3. We recognized that a defendant on supervised release has a limited due process right to confront and cross-examine adverse witnesses but, given the liberty interest at stake, that right "should not be denied without a strong reason." *Id.* at *3. We also suggested ways that district courts may admit non-hearsay evidence in revocation proceedings, noting that when live testimony would be difficult or burdensome to obtain, the confrontation need not be face-to-face. *Id.* For example, video-conferencing, if available, would allow a remote witness to testify and face cross-examination with minimal inconvenience and expense. *Id.* And when such inexpensive means of communication are available, we observed that a remote witness should generally be expected to appear by that means, even if the hearsay seems reliable. *Id.* Applying these principles in *Jordan*, we found that the admission of Trooper Wilson's police report without conducting the required balancing test was error, that the hearsay evidence that was admitted was not so reliable that the error could be deemed harmless, and that remand for a new revocation hearing was required. *Id.*

We conclude here, as we did in *Jordan*, that the hearsay evidence sought to be admitted in Wallace's case (double hearsay, in at least one instance) was not so reliable as to obviate the need for the application of the balancing test prior to admitting the evidence at Wallace's revocation hearing. Nor does any of the government's other evidence introduced at the revocation hearing sufficiently corroborate the challenged hearsay evidence as to render the erroneous admission of that evidence harmless. For this

reason, as we discussed in *Jordan*, *Kelley* does not require a different result. *See Kelley*, 446 F.3d at 692-93 (affirming revocation of supervised release based on hearsay evidence for which government had strong corroborating evidence).

Because the government focused on the reliability of the police report in defending its admission at Wallace's revocation hearing, we need not address whether the government had good cause to deny Wallace the right to confront and cross-examine Trooper Wilson or whether that cause outweighed Jordan's constitutional interests. The district court on remand will address this question when it conducts the balancing test under Rule 32.1(b)(2)(C). Also, on remand, the government may introduce additional evidence to meet the balancing test. *See Jordan*, 2014 WL 292396, at *5. This may include Trooper Wilson's testimony, either in person or via video or telephonic appearance, and any other potentially corroborating evidence to support the November 3 police report. Further, because the district court did not apply the balancing test required by Rule 32.1(b)(2)(C) and we are not convinced that the error was harmless, we need not reach Wallace's Fifth Amendment due process claim. *Id.*

Wallace also argues that remand for resentencing is required because the prosecutor misspoke during his closing argument. We need not address this argument in light of our conclusion that the district court erred by not conducting a proper balancing analysis.

Accordingly, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this order.