In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2866

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DENNIS MOSLAVAC,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 02-CR-75 — **Rudolph T. Randa**, *Judge.*

ARGUED JANUARY 6, 2015 — DECIDED FEBRUARY, 18, 2015

Before FLAUM, WILLIAMS, and TINDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* In July 2014, Dennis Moslavac was three months shy of completing a four year term of supervised release when he was arrested and accused of violating the terms of that release. Among other alleged violations, the government accused Moslavac of committing a battery against a female victim, Jina Kizivat. Kizivat's nine-year-old daughter, D.S., allegedly witnessed the battery.

At Moslavac's parole revocation hearing, the government called Walter Sturgeon to testify about the alleged battery of Kizivat. Sturgeon is D.S.'s father and Kizivat's ex-husband; he was not present during the alleged battery. Sturgeon relayed only what D.S. told him about the incident, and the government introduced a voicemail that D.S. left for Sturgeon on the day of the alleged battery. Neither Kizivat nor D.S. testified at Moslavac's revocation hearing. Over Moslavac's objection, the district court allowed D.S.'s statements into evidence on the theory that they were excited utterances, but did not explicitly balance the interests of the parties under Federal Rule of Criminal Procedure 32.1(b)(2)(C). For that reason, we now reverse.

## I. Background

Dennis Moslavac was convicted of possessing cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1), and sentenced to 105 months imprisonment, followed by four years of supervised release. Moslavac's term of supervised release was set to end on October 7, 2014. In July 2014, Moslavac was arrested based on allegations that he violated the terms of his supervised release. The district court held a revocation hearing on August 14, 2014 to determine what sentence—if any—Moslavac should receive for the alleged violations. The government claimed that Moslavac violated the terms of his supervised release in seven ways: (1) the alleged battery of female victim, Jina Kizivat; (2) the alleged battery of female victim, Joann Werner; (3) having a positive urine test for drugs; (4) failing to report for drug testing; (5) associating with persons using marijuana; (6) failing to give his parole officer advance notice of a change in residence; and (7) failing to report to an appoint-

ment with his parole officer. Moslavac contested the first two battery allegations, but did not dispute the remaining claims.

At Moslavac's revocation hearing, the government presented evidence of both batteries. Only the evidence relating to the alleged battery of Kizivat is at issue in this appeal. As evidence of the Kizivat battery, the government relied on the "testimony" of D.S.—Kizivat's nine-year-old daughter who allegedly witnessed the battery. Specifically, the government called Walter Sturgeon—D.S.'s father and Kizivat's ex-husband—as its only witness. Sturgeon testified that he dropped D.S. off with Kizivat on the morning of the alleged incident, and that he received several phone calls from D.S. later in the day telling him that Moslavac hit Kizivat's foot with a metal object after he became angry about a phone call Kizivat received. D.S. apparently conveyed to Sturgeon that the incident was all her fault because she told Moslavac about the phone call. The next day, Sturgeon realized that D.S. left a voicemail message on his phone when she was attempting to reach him. The government played D.S.'s voicemail during the revocation hearing in conjunction with Sturgeon's testimony.

The district court determined that D.S.'s statements—as relayed by Sturgeon and by D.S.'s voicemail—were excited utterances, and therefore were admissible hearsay. *See* Fed. R. Evid. 803(2). The district court did not, however, engage in an interest balancing analysis under Federal Rule of Criminal Procedure 32.1(b)(2)(C). The district judge stated that he found D.S.'s "testimony" to be highly credible, completely convincing, and that the court would give it "great weight." Supervised Release Revocation Hr'g Tr. 76, Aug. 14, 2014.

Because all of Moslavac's parole violations were "Grade C" violations, and because he had a criminal history category of IV, the advisory revocation sentencing guidelines suggested a sentence of between six and twelve months imprisonment. The government requested a sentence between nine and twelve months. The district court subsequently sentenced Moslavac to nine months of imprisonment, followed by an additional two years of supervised release.

## II. Discussion

There is no consensus among our sister circuits about what standard of review to apply when reviewing a district court's admission of hearsay testimony at a parole revocation hearing without conducting an explicit balancing test under Rule 32.1(b)(2)(C) . Some circuits apply an abuse of discretion standard, *see United States v. Doswell*, 670 F.3d 526, 533 (4th Cir. 2012), *United States v. Martin*, 382 F.3d 840, 844 (8th Cir. 2004), while others apply de novo review. *See United States v. Lloyd*, 566 F.3d 341, 344 (3d Cir. 2009). We conclude that the standard of review does not affect our analysis in this case, as the district court's admission of the hearsay testimony—without conducting a Rule 32.1(b)(2)(C) balancing test—runs directly afoul of our precedent in *United States v. Jordan*, 742 F.3d 280 (7th Cir. 2014); the district court erred under either standard of review. In any event, since the parties did not fully brief the issue, we reserve addressing it in this case.

### A. The district court erred in not conducting an explicit balancing test under Rule 32.1(b)(2)(C).

Federal Rule of Criminal Procedure 32.1(b)(2)(C) states that at a parole revocation hearing, the defendant is owed

"an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." In *United States v. Jordan*, we held that "Rule 32.1(b)(2)(C) requires a district court in a revocation hearing explicitly to balance the defendant's constitutional interest in confrontation and cross-examination against the government's stated reasons for denying them." 742 F.3d at 280. Here, the government concedes that the district court did not explicitly conduct the Rule 32.1(b)(2)(C) balancing inquiry. Rather, the government argues that the district court *implicitly* weighed these concerns by finding that D.S.'s statements were excited utterances, and thus admissible hearsay. *See* Fed. R. Evid. 803(2). The government argues further that it was the district court's conclusion that D.S.'s statements were particularly reliable, in addition to being admissible, which demonstrates that the district court implicitly weighed the interests of the parties.

In *Jordan*, however, we stated that "reliability cannot be the beginning and the end of the 'interest of justice' analysis under Rule 32.1(b)(2)(C), and we do not mean to imply that finding the hearsay reliable would alone suffice to support its admission under the rule." *Id.* Furthermore, *Jordan* created the bright-line rule in this circuit that a district court must *explicitly* balance the defendant's interests in confrontation against the government's interests in not producing the relevant witness. *Id.* Therefore, the government's position that the district court *implicitly* considered these factors still runs counter to the clear mandate of *Jordan*.

**B. The district court's error was not harmless.**

The government argues that even if the district court erred in failing to explicitly balance the interests of the parties under Rule 32.1(b)(2)(C), that this error was harmless for three reasons: (1) the government had compelling reasons for not producing D.S. at the revocation hearing; (2) D.S.'s hearsay statements were reliable; and (3) it is likely that the district court would have issued Moslavac the same sentence given the evidence of other parole violations presented at his revocation hearing. We are not persuaded by any of the government's arguments.

First, the government did not adequately discuss—nor did the district court adequately consider—the government's reasons for not producing D.S. at the revocation hearing. In *Jordan*, we stated that Rule 32.1(b)(2)(C) requires "a district court in a revocation hearing explicitly to balance the defendant's constitutional interests in confrontation and cross-examination against the government's *stated reasons for denying them*." 742 F.3d at 280 (emphasis added). The government offered no reasons for not producing D.S. during Moslavac's hearing, nor did the district court discuss any potential reasons for D.S.'s absence. At oral argument on appeal, the government argued that its reasons for not producing D.S. "should have been obvious," encouraging us to find the district court's error harmless. Nothing in the wording of Rule 32.1(b)(2)(C), however, indicates that the government is owed such deference. Thus, we decline to find that the district court's Rule 32.1(b)(2)(C) error was harmless simply because compelling reasons for not producing D.S. may exist in the abstract.

Next, the government argues that D.S.'s statements were so reliable that even if the district court erred in admitting them, the inherent trustworthiness of the statements rendered the error harmless. The government urges us to find D.S.'s statements reliable—as the district court did—by focusing on the fact that D.S. claimed responsibility for the incident, thus lending more credence to her version of events. Here, we draw further guidance from our decision in *Jordan*, where we tackled the question of whether a Rule 32.1(b)(2)(C) error was harmless if the evidence ultimately admitted was deemed sufficiently reliable on appeal. In *Jordan*, in finding that a police report was not sufficiently reliable, we noted that the probation officer who testified about the report had "no independent knowledge of the events, so his testimony merely repeated rather than corroborated the police report." 742 F.3d at 281. Accordingly, we concluded that none of the evidence offered by the government "sufficiently corroborates the report's account … to allow us to determine on appeal that the evidence was so reliable as to render the district court's error harmless." *Id.* Here, Sturgeon's testimony went wholly uncorroborated at Moslavac's hearing, with the exception of a hysterical voicemail from D.S.[1] As in *Jordan*, Sturgeon had no independent knowledge of the alleged events, but rather repeated what his daughter told him. Therefore, we find the teachings of *Jordan* applicable here, and conclude that D.S.'s uncorroborated statements—as relayed by Sturgeon—were not so clearly reliable

---

[1] The court has listened to D.S.'s voicemail, and we agree with Moslavac that it has negligible corroborative value, if any. It is, as Moslavac characterized it during oral argument, largely a recording of D.S. sobbing.

as to make the district court's error under Rule 32.1(b)(2)(C) harmless.

Finally, the government argues that the district court's error was harmless because Moslavac would have received the same sentence even if the district court had not considered D.S.'s statements. Specifically, the government argues that the district court considered evidence of several other Grade C violations, and that any one of these other violations would have been sufficient to warrant an advisory guidelines range of six to twelve months.

Moslavac does not dispute this contention. However, simply because the guidelines range would have been the same without the Kizivat battery evidence does not mean that Moslavac would have received his current sentence had the evidence not been introduced. In fact, the district court placed considerable emphasis on the Kizivat battery during sentencing, noting,

> And that's credible evidence. So when you say it's an excited utterance, while we have to look at those with caution, when it has this type of validity in the Court's 40 years of experience in handling many, many, many of these cases and having many child witnesses under these types of circumstances testify in this manner, and that is all testimony that gives the Court great confidence that—when it says this is absolute validity and should be given great weight, it is going to give it great weight … .

Supervised Release Revocation Hr'g Tr. 76. In light of the considerable and apparent weight that the district court gave

to the Kizivat battery during Moslavac's sentencing, we cannot conclude that Moslavac would have received the same sentence notwithstanding the Kizivat incident. Thus, it was not harmless error for the district court to overlook its obligation to perform an interests analysis pursuant to Rule 32.1(b)(2)(C).

### III. Conclusion

The judgment of the district court is VACATED, and the case is REMANDED for a re-sentencing hearing consistent with this opinion.[2]

---

[2] Moslavac asked this court to assign his re-sentencing hearing to a different district court judge. We find no compelling reason for such a reassignment, and therefore decline to do so.