In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 19-3050

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EUGENE FALLS,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:05-cr-30027-3 — **Staci M. Yandle**, *Judge.*

———————————

SUBMITTED MAY 13, 2020* — DECIDED MAY 26, 2020

———————————

Before FLAUM, HAMILTON and ST. EVE, *Circuit Judges.*

FLAUM, *Circuit Judge.* Eugene Falls appeals the revocation of his supervised release. He argues that the district court

———————————

* We granted the parties' joint motion to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the Court. Fed. R. App. P. 34(a)(2)(C).

erred during his revocation hearing by not conducting an explicit "interest of justice" analysis under Federal Rule of Criminal Procedure 32.1(b)(2)(C) before admitting an audio recording of an interview during which he confessed to the violation in question.

We held in *United States v. Jordan* that when a district court is deciding whether to admit hearsay at a revocation hearing, it must explicitly conduct an interest-of-justice analysis under Rule 32.1(b)(2)(C) by balancing the defendant's interest in confrontation against the government's stated reasons for not making the declarant available for cross-examination. 742 F.3d 276, 280 (7th Cir. 2014). *Jordan* does not apply here, however, because the probative statements in the audio recording were Falls's own non-hearsay statements.

Falls suggests that we should nevertheless extend *Jordan* to require an explicit application of Rule 32.1(b)(2)(C)'s interest-of-justice balancing test given his interest in questioning his interviewing officer about the nature and circumstances of his interview. Falls has not shown, however, that his interviewing officer was an "adverse witness" that Rule 32.1(b)(2)(C) entitled him to question subject to an interest-of-justice determination. Accordingly, we affirm.

## I. Background

Defendant-appellant Eugene Falls began serving a ten-year term of supervised release in February 2017 after he was released from prison. One of the conditions of Falls's supervised release was that he not commit another crime. On March 25, 2019, Falls's supervising probation officer Christian Hoepker filed an amended petition to revoke Falls's super-

vised release. The petition alleged several violations, including that on or about March 8, 2019, Falls committed the offense of attempted possession with intent to distribute a controlled substance.[1]

At Falls's revocation hearing in October 2019, the government presented evidence of Falls's alleged violations. As to the attempted-possession-with-intent-to-distribute violation, the government began by presenting testimony from Hoepker. Hoepker testified that she learned of the alleged criminal conduct from Drug Enforcement Administration ("DEA") Special Agent Jarrett Neff on March 8,[2] at which time she also learned that Falls was in DEA custody.

Hoepker further testified that she had listened to an audio recording of an interview the DEA conducted and identified the voice of the person being interviewed as Falls's voice. Falls objected to the introduction of the recording, arguing that because the audio recording contained hearsay, Federal Rule of Criminal Procedure 32.1(b)(2)(C) and *United States v. Jordan*, 742 F.3d 276 (7th Cir. 2014) required the district court to balance the government's proffered reason for not calling the interviewing officer with Falls's interest in confronting and cross-examining him. The government responded that the statements in the audio recording were not hearsay because

---

[1] On March 19, 2019, a grand jury charged Falls in a separate criminal case with attempting to possess with intent to distribute methamphetamine on or about March 8, 2019. *See United States v. Falls*, No. 19-cr-30034 (S.D. Ill. Mar. 19, 2019), ECF No. 1.

[2] The government asserts that Hoepker misspoke when she testified that the date was March 8, 2018 rather than March 8, 2019. Falls did not respond to this assertion. Read in context, it appears that Hoepker simply misstated the year.

they were Falls's own admissions, and that the court was therefore not obligated to conduct the balancing test under Rule 32.1(b)(2)(C) and *Jordan*, 742 F.3d at 276. The district court overruled Falls's objection without requiring the government to provide cause for not calling the interviewing officer.

The government then introduced the first ten minutes of the audio recording. The interviewing officer began the interview by stating the time of the interview as March 8, 2019 at 2:15 p.m. and advising Falls of his *Miranda* rights. During the interview, Falls stated that on the date of the interview, he was supposed to receive ten pounds of methamphetamine in exchange for $28,000. Falls explained that he brought $10,000 of his own money to the meeting location as a down payment. After hearing the evidence, the district court concluded that the audio recording was reliable and that it was more likely than not that Falls committed the attempted-possession-with-intent-to-distribute violation.

The attempted-possession-with-intent-to-distribute violation was a Grade A violation under the Sentencing Guidelines policy statements. With a criminal history category of V, Falls's corresponding Guidelines policy-statement range was 46 to 57 months in prison. *See* U.S.S.G. § 7B1.4(a). The district court sentenced him to 57 months in prison. Falls's other violations were all Grade B or lower. Hence, without the attempted-possession-with-intent-to-distribute violation, Falls's Guidelines policy-statement range would have been 18 to 24 months in prison. *See id.* §§ 7B1.1(b) & 7B1.4(a).

Falls now challenges the court's finding as to the attempted-possession-with-intent-to-distribute violation. Falls maintains that the district court committed reversible error by

not explicitly applying the interest-of-justice balancing test required by Rule 32.1(b)(2)(C) and *Jordan*, 742 F.3d at 276. On appeal, Falls asserts a new reason that the district court was required to conduct the balancing test, which he did not raise below: that his statements may have been involuntary.

## II. Discussion

A district court may revoke supervised release if it finds by a preponderance of the evidence that the defendant violated a condition of his supervised release. *See* 18 U.S.C. § 3583(e)(3). "[W]e review the revocation of supervised release for abuse of discretion, and we review the district court's factual findings supporting that revocation for clear error." *United States v. Raney*, 797 F.3d 454, 463 (7th Cir. 2015).

Federal Rule of Criminal Procedure 32.1(b)(2)(C) provides that at a revocation hearing, a defendant is entitled to "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." The Federal Rules of Evidence generally do not apply during a revocation hearing. Fed. R. Evid. 1101(d)(3). But when a district court is deciding whether to admit hearsay at a revocation hearing, Rule 32.1(b)(2)(C)'s "interest of justice" provision requires the court "explicitly to balance the defendant's constitutional interest in confrontation and cross-examination against the government's stated reasons for denying them." *United States v. Jordan*, 742 F.3d 276, 280 (7th Cir. 2014).

We have left open whether we review de novo or for an abuse of discretion a district court's decision to admit hearsay at a revocation hearing without conducting an explicit interest-of-justice balancing test under Rule 32.1(b)(2)(C). *See United States v. Moslavac*, 779 F.3d 661, 663 (7th Cir. 2015). We

need not decide here the appropriate standard of review in such cases, however, because the probative statements in the audio recording at issue were not hearsay.

### A. *Jordan*

The audio recording included Falls's own statements and the statements of his interviewing officer. Falls's own statements were non-hearsay statements of a party-opponent, *see* Fed. R. Evid. 801(d)(2)(A), and his interviewing officer's statements were offered to provide context for Falls's answers, not for their truth, *see* Fed. R. Evid. 801(c)(2). The district court, therefore, was not required to conduct an explicit interest-of-justice balancing test under *Jordan*, which applies only to the admission of hearsay. 742 F.3d at 280.

In *Jordan*, the district court erred by not explicitly weighing the defendant's interest in confrontation against the government's asserted reason for not making available the officer who authored the police report on which the government primarily relied to establish the violation in question. *Id.* Here, far from relying on a declarant's out-of-court testimonial statements contained in a police report, the government relied on Falls's own statements to establish the violation in question.

Falls argues that the interviewing officer's introductory statement regarding the date of the interview, in particular, was hearsay. The government responds that the interviewing officer's statement of the date of the interview was offered not for its truth but for context as to what Falls meant when he later spoke about his illegal activities taking place "today." *See United States v. Montez*, 858 F.3d 1085, 1089–90 (7th Cir. 2017) (explaining that statement offered to make sense of another

party's admission is not hearsay if not offered for its truth). Falls maintains that the statement about the date was nevertheless hearsay because it was relevant only if true. *See id.* at 1089 ("[W]hen an argument is made that out-of-court statements should be admitted as context, the relevant legal question is still whether those statements are offered for their truth.").

The reliability of the interviewing officer's statement about the date so overwhelmed Falls's interest in confronting the interviewing officer about that statement that the district court did not need to address cause for the interviewing officer's absence, even if that lone statement was hearsay. Following the reasoning of the Third Circuit, "we reject a *per se* rule that a district court's failure to explicitly address cause [for a declarant's absence] amounts to reversible error in all cases," because "[i]n some cases, the releasee's interest in confrontation may be overwhelmed by the hearsay's reliability such that the Government need not show cause for a declarant's absence." *United States v. Lloyd*, 566 F.3d 341, 345 (3d Cir. 2009). The record indicates that Falls was in custody on March 8, 2019 for conduct that Falls himself spoke about occurring during the day of the interview, and there is nothing that would call that date into question.

Falls has not asserted that the interview did not take place on or about March 8, 2019, nor has he identified any interest he had in cross-examining the interviewing officer about the date of the interview. To prove the violation at issue, the government needed only establish that the violation occurred "during the term of supervision." 18 U.S.C. § 3583(d). The revocation hearing happened just under three years into Falls's ten-year term of supervised release, so there is little

room for doubt that the conduct occurred while Falls was on supervised release.[3] Indeed, a grand jury charged Falls with attempting to possess with intent to distribute methamphetamine on or about March 8, 2019 in a separate criminal case. *See United States v. Falls*, No. 19-cr-30034 (S.D. Ill. Mar. 19, 2019), ECF No. 1. Falls has never insisted that he was not adequately put on notice or that he was otherwise misled as to when the violation was alleged to have occurred.

### B. Authenticity and Voluntariness

Falls contends that, in so far as the statements in the recording were not hearsay, we should extend *Jordan* to require the explicit application of Rule 32.1(b)(2)(C)'s interest-of-justice analysis given the possibilities that the recording was inauthentic and the recorded statements were coerced. Apart from any hearsay concerns, Falls asserts that he had an interest in cross-examining his interviewing officer so that he could inquire into the nature and circumstances of the recorded interview. We decline to extend *Jordan* for three reasons.

*First*, Rule 32.1(b)(2)(C) provides that, subject to an interest-of-justice determination, a defendant is entitled to question any "adverse witness." Here, however, there was no meaningful sense in which the interviewing officer was an "adverse witness" for purposes of Rule 32.1(b)(2)(C). The interviewing officer was not Falls's accuser; Falls was his own accuser.

---

[3] During the recording, Falls also stated that he had not been out of jail for very long and that he had spent a lot of time in a halfway house.

The rationale for taking into account the defendant's interest in confronting adverse witnesses under Rule 32.1(b)(2)(C), as we explained in *Jordan*, is that "[c]ross-examination provides an opportunity to expose a witness's motivation for testifying, his bias, or his possible incentives to lie." *Jordan*, 742 F.3d at 279 (citation and internal quotation marks omitted). Any concerns about the interviewing officer's motivation, bias, or possible incentives to lie were exceedingly small or non-existent where Falls's own statements were the statements that established the violation in question. Falls has not explained how he would have been able to cast doubt on the credibility of his own statements by cross-examining his interviewing officer.

*Second*, as to authenticity, Federal Rule of Evidence 901 regarding the authentication of evidence does not apply during a revocation hearing. *See* Fed. R. Evid. 1101(d)(3). To the extent that Falls challenges the reliability of the recording, the district court's determination that the probative statements in the audio recording were reliable non-hearsay was adequately supported by Hoepker's testimony and the contents of the recording itself. Hoepker testified that she regularly interacted with Falls and was therefore familiar with his voice, which she identified on the recording. Aside from a generalized concern about the ubiquity of digitally altered material in "today's day and age," Falls asserts no basis for calling the reliability of the recording into question. Indeed, Falls has not even asserted that the DEA did not interview him on March 8, 2019 or that the recording did not accurately capture his voice.

*Third*, as to voluntariness, Falls likely waived the argument. During his revocation hearing, he appears to have

made a strategic decision to assert his Rule 32.1(b)(2)(C) chal-
lenge on the ground that the statements were hearsay rather
than coerced. *See United States v. Brodie*, 507 F.3d 527, 531 (7th
Cir. 2007) ("[W]hen the defendant selects among arguments
as a matter of strategy, he … waives those arguments he de-
cided not to present."). Waiver generally precludes appellate
review. *United States v. Dridi*, 952 F.3d 893, 898 (7th Cir. 2020).

Even if we were to view Falls's voluntariness challenge as
forfeited rather than waived, he would still not prevail.
Whereas waiver is the "intentional relinquishment of a
known right," an argument is forfeited if the party does not
"timely assert" it. *United States v. Jaimes-Jaimes*, 406 F.3d 845,
847 (7th Cir. 2005). We review forfeited arguments for plain
error, which an appellant may establish by showing: (1) an
error; (2) that is plain; (3) that affected his substantial rights;
and (4) that seriously affected the fairness, integrity, or public
reputation of the proceedings. *United States v. Dowthard*, 948
F.3d 814, 817–18 (7th Cir. 2020).

The district court did not commit an error, plain or other-
wise. Had Falls alerted the court that he was challenging the
voluntariness of his recorded statements, the court may well
have recognized the need to more fully examine the nature
and circumstances of the interview. But Falls neither raised
any question as to the voluntariness of his statements before
the district court, nor has he pointed to any "alerting circum-
stances" that would have suggested to the district court a
need to investigate whether he made those statements volun-
tarily. *See United States v. Taylor*, 374 F.2d 753, 756 (7th Cir.
1967) (holding that district court did not err in declining to
investigate voluntariness of statement without objection by

defendant absent presence of "[c]ertain alerting circum-stances, such as a defendant's apparent abnormal mental or physical condition, obvious ignorance, or lack of awareness").

Even now, Falls does not argue that he was coerced into making his recorded statements, nor does he explain how he might have been able to establish that he made those statements involuntarily if given the opportunity to cross-examine the interviewing officer. He therefore has not shown any error that affected his substantial rights or the integrity of judicial proceedings.

### III. Conclusion

For the foregoing reasons, we AFFIRM.