In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-3282

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID PEREZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cr-00859-1 — **Steven C. Seeger**, *Judge.*

ARGUED JANUARY 25, 2024 — DECIDED APRIL 24, 2024

Before HAMILTON, BRENNAN, and KIRSCH, *Circuit Judges.*

HAMILTON, *Circuit Judge.* While appellant David Perez was attending a public event, a police surveillance camera recorded him holding what appeared to be a firearm. His conditions of federal supervised release, not to mention 18 U.S.C. § 922(g)(1), made it unlawful for Perez to possess a firearm. At a supervised release revocation hearing, the government submitted as evidence a police surveillance video that the government argued showed Perez holding a gun. The district

judge asked Perez's probation officer to narrate the video as it was played during the hearing.

Perez objected to the probation officer's narration of the video and asked to cross-examine her. The district court denied that request. The judge asserted that the probation officer was not a witness and explained that he wanted the narration only to have a record of the video's contents for the hearing transcript. The judge did, however, invite defense counsel to suggest questions that the judge himself could pose to the probation officer. Defense counsel did not take up that offer.

In this appeal, Perez argues that the probation officer was in substance an adverse witness and that the district court violated Federal Rule of Criminal Procedure 32.1(b)(2)(C) and his Fifth Amendment right to due process by refusing to allow counsel to cross-examine her. Perez also challenges the district court's ultimate finding that he possessed a firearm and the resulting revocation of his supervised release.

The probation officer's narration of the video was clearly adverse to Perez. Under these unusual circumstances, his counsel should have had the opportunity to cross-examine the probation officer. In the end, however, we think the error was harmless. The record does not show that the district court relied upon the probation officer's testimony on any disputed issue in finding that Perez possessed a firearm in violation of the terms of his supervised release. The video provided ample evidence that Perez possessed a firearm, and the court did not abuse its discretion in revoking his supervised release. We affirm the judgment of the district court, while counseling district courts against using this well-intentioned procedural shortcut in revocation hearings.

I. *Factual and Procedural History*

In November 2013, David Perez pled guilty to one count of possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). A federal court sentenced him to 120 months in prison followed by six years of supervised release. Perez began his term of supervised release on July 6, 2020. One condition of his supervised release was the nearly universal condition that he not possess a firearm, ammunition, destructive device, or other dangerous weapon. See 18 U.S.C. § 3583(d), citing 18 U.S.C. § 3563(b)(8) (discretionary conditions of probation).

On October 13, 2022, the United States Probation Office submitted to the district court a supervised release violation report alleging that Perez had violated the prohibition on possessing a firearm. The report cited a Chicago Police Department report that described police contact with Perez on September 1, 2022 when officers were monitoring a gang-related memorial. They saw Perez display what appeared to be a handgun. Officers tried to approach Perez, but he walked away briskly and disappeared into a home despite being ordered to stop. The police eventually apprehended Perez at the back of the home. By that time, though, he did not have in his possession the item that had appeared to be a firearm. Police did not arrest Perez. Also included in the report were statements Perez made regarding the incident. Perez admitted that he had seen police officers the day of the memorial, panicked, and then entered a friend's home. Perez denied possessing a firearm, though.

The district court held a supervised release revocation hearing on October 26, 2022. Present at the hearing were the government, Perez and his counsel, and Perez's probation

officer. No firearm had been recovered, but the government offered several exhibits as evidence, including: (1) a video recording from a police surveillance camera that showed Perez brandishing what appeared to be a firearm; (2) screenshots from that police video recording; and (3) screenshots from Chicago Police Department body-worn camera recordings that showed Perez's interactions with police shortly after he was observed brandishing the apparent firearm. Neither party presented any witnesses.

At the revocation hearing, the district judge watched the surveillance video. The judge also asked the probation officer to describe for the record what was happening in the video. At various times while the video was playing, the judge asked that the video be stopped and then posed questions to the probation officer. First, the judge asked the probation officer whether Perez was depicted in the video, and if so, how she knew it was Perez. The probation officer identified Perez as one of the people in the video. She explained that she had supervised Perez for a long time and was familiar with his appearance and mannerisms.

The judge then told the probation officer to continue to describe what she was seeing in the video. The officer explained that the video showed Perez "removing a firearm from his shorts and brandishing the firearm in multiple directions while slowly walking towards another vehicle." Perez's attorney objected to this description, saying that whether the object was actually a firearm remained a contested fact that the court had not yet decided. In response, the judge explained that the probation officer was merely describing what was being shown in the video for the hearing transcript record because the video did not have audio. Perez's attorney argued

that it was misleading for the probation officer to describe the object as a firearm even if just for the hearing transcript record. In response, the judge asked the probation officer a series of questions about the object Perez was holding in the video.

First, the judge asked the probation officer what the object appeared like to her. She said it looked like a firearm. The judge asked why she thought so. She answered that it was based on her training and expertise in handling firearms in her role as a probation officer. Finally, the judge restarted the video from the beginning. The judge told the probation officer to ask to pause the video anytime she saw the object Perez was holding so that she could describe the object and why she believed it was a firearm. She did so several times and described aspects of the object, including what looked to her like the barrel of a firearm.

Before the parties presented their arguments to the district court, Perez's attorney asked for an opportunity to ask questions of the probation officer, given her exchanges with the court. The judge told Perez's attorney instead to address any questions to the judge because the probation officer was not "taking the stand today." The judge explained that he had walked through the video with the probation officer on the record "simply because I couldn't play the video and have it on the record about what people were seeing and I did care to get [the probation officer's] perspective on who the person was." The judge then offered to ask the probation officer follow-up questions suggested by defense counsel. Such questioning by the court is ordinarily not thought to be an adequate substitute for confrontation and cross-examination by the party or his counsel. Defense counsel did not take up the court's offer, choosing instead to make arguments directly to

the judge about the probation officer's credibility and the substance of her testimony. At the conclusion of the October 26, 2022 hearing, the judge ordered Perez detained and continued the revocation hearing to a later date.

When the hearing resumed on December 1, 2022, the judge found by a preponderance of the evidence that Perez possessed a firearm in violation of the conditions of his supervised release. The court addressed two questions: whether Perez was depicted in the video and whether the object he had been holding was a gun. As to identity, the judge explained that he compared the person in the video, particularly his facial features and tattoos, to Perez, who was present in the courtroom. They were clearly the same person. The judge also said that the probation officer's identification of Perez as the person in the video corroborated the judge's own finding.

On the second question, the judge explained at some length why he believed the object held by Perez was a firearm. The judge explained that the videos clearly showed an object that looked like a firearm and that Perez had handled the object consistently with the way a person would handle a firearm. The judge added that Perez, by fleeing from law enforcement and discarding the object, acted like a person trying to hide contraband from law enforcement. At no point did the judge cite the probation officer's in-court statements to support his finding that Perez possessed a firearm.

On December 19, 2022, the district court held a sentencing hearing for the supervised release violation. After hearing from the parties and correctly calculating the advisory guideline range, the court sentenced Perez to a within-guideline sentence of 26 months in prison followed by another three years of supervised release. This appeal followed.

II. *Standard of Review*

A district court may revoke a term of supervised release if the court finds by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3). "In general, we review the revocation of supervised release for abuse of discretion, and we review the district court's factual findings supporting that revocation for clear error." *United States v. Patlan*, 31 F.4th 552, 556 (7th Cir. 2022). While we review decisions to revoke supervised release for abuse of discretion, we still review constitutional arguments de novo. *United States v. Mosley*, 759 F.3d 664, 667 (7th Cir. 2014).

III. *Analysis*

A. *Confrontation of Adverse Witness*

The Sixth Amendment right to confront adverse witnesses in a criminal trial does not apply in proceedings to revoke supervised release, but a supervisee has some due process rights that may include confronting adverse witnesses, depending on the circumstances. See *United States v. Kelley*, 446 F.3d 688, 690–91 (7th Cir. 2006); see generally *Morrissey v. Brewer*, 408 U.S. 471, 488–89 (1972) (for parole revocation, "the minimum requirements of due process … include … the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation) …."). The rule announced by the Supreme Court in *Morrissey* has been codified in Federal Rule of Criminal Procedure 32.1(b)(2)(C).

We understand and appreciate the district court's desire to have a verbal description of the video evidence in the written record of the hearing. Despite those good intentions,

however, and whether she was put under oath or not, it is clear to us that the probation officer was acting as a witness and that her statements were adverse to Perez. In particular, the probation officer described the object held by Perez in the video as a firearm—a conclusion she explained was grounded in her training and experience with firearms. Accordingly, under both *Morrissey* and Rule 32.1(b)(2)(C), Perez had a right to cross-examine the probation officer at the revocation hearing unless the district court determined that the interest of justice did not require the witness to appear. See *Morrissey*, 408 U.S. at 488–89.

The district court made no express interest-of-justice finding against allowing the probation officer to be confronted and cross-examined. Nor could such a finding have been supported. The probation officer was already present at the hearing and was readily available for cross-examination. Cf. *United States v. Jordan*, 742 F.3d 276, 279 (7th Cir. 2014) ("When liberty is at stake, the limited right to confront and cross-examine adverse witnesses should not be denied without a strong reason.… For example, where live testimony would be difficult or burdensome to obtain, confrontation need not be face-to-face."). The district court erred in denying Perez the opportunity to cross-examine the probation officer.[1]

B.  *Harmless Error*

That error was harmless, though. The question is whether we are confident the district court would have still found a

---

[1] Because the probation officer offered only her own observations and not any hearsay, the special rules for using hearsay at a revocation hearing did not come into play here. See, e.g., *United States v. Falls*, 960 F.3d 442, 445 (7th Cir. 2020), distinguishing *United States v. Jordan*, 742 F.3d at 280.

violation of Perez's conditions of supervised release even absent the probation officer's testimony. See *Mosley*, 759 F.3d at 669 (erroneous admission of evidence at supervised release revocation hearing may still be harmless where violation would have been found even without the improper evidence). The issue of revocation depended on two factual issues: first, was it Perez in the video, and second, was the object he possessed a firearm? The district court addressed those in sequence.

The only aspect of the probation officer's testimony the district judge relied upon was her identification of Perez as the man in the video based on her familiarity with him. The judge relied on this statement by the probation officer as corroboration of what he said was his own independent identification based on the video and his own observation of Perez in the courtroom. Also, Perez's counsel explained that she would not present any evidence to contest whether it was Perez in the video. Cross-examination would not have undermined the finding that it was Perez in the video.

As for whether the object Perez had been holding was a firearm, the district judge never referred to the probation officer's testimony. He explained that his finding was based on his own careful review of the videos and inferences drawn from them. We take the judge at his word. In addition, in response to the court's invitation, the defense did not identify any potentially fruitful lines of cross-examination at the revocation hearing. Nor has the defense done so on appeal. Because the judge did not rely on the probation officer's narrative on the issue of possession, we conclude the judge would have found a violation of Perez's supervised release even

without the probation officer's testimony. The erroneous denial of cross-examination was harmless.

C. *Possession of the Firearm*

Perez also brings a substantive challenge, arguing that the district court erred by finding that he possessed a firearm and revoking his supervised release. The videos submitted as evidence by the government clearly show Perez holding an object that looks like a firearm, as the court observed. The court's finding was not clearly erroneous. The court explained that the videos show Perez fleeing from police and entering a residence. When the police apprehended Perez at the back of the residence a few minutes later, he no longer had the object that looked like a firearm. This series of events, clearly established by the video evidence, is consistent with possessing and hiding contraband. We agree with the district court that Perez's behavior in the video—walking away from police and quickly disposing of the object—further supports an inference that the object was a real firearm that put Perez in violation of his terms of supervised release. The district court's finding that the object Perez is seen holding in the police videos was a real firearm was not clearly erroneous. Accordingly, the district court did not abuse its discretion in revoking Perez's supervised release. The judgment of the district court is

AFFIRMED.